## APPEAL OF JOSIAH WEDGWOOD & SONS, LTD.

Docket No. 3647.    Submitted August 3, 1925.    Decided January 16, 1926.

> 1. When it is shown that liability for additional compensation, based upon a graduated percentage of net profits, accrued during the year, such additional compensation should be allowed as a deduction from gross income for such year, notwithstanding the amount was not entered upon the books or paid until the subsequent year, due to the fact that the amount could not be definitely fixed until approval by the home office in England of the audit of the books.
>
> 2. Under the provisions of the Revenue Act of 1918 the profits tax of foreign corporations should be computed under the provisions of section 328.

*Kingman Brewster, Esq.*, for the taxpayer.
*George G. Witter, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax in the amount of $9,071.50 for the calendar year 1918. In its original petition taxpayer, which is a foreign corporation, alleged that the Commissioner erred in denying a deduction of $6,773.89, as additional compensation accrued during the year, and that the Commissioner mathematically erred in his computation of the profits tax under section 302 of the Revenue Act of 1918. At the hearing taxpayer amended its petition so as to allege that its profits tax should have been computed under section 301 of the Revenue Act of 1918, subject to the limitations in section 302, and not under section 328, subject to section 302, as was done by the Commissioner.

### FINDINGS OF FACT.

Taxpayer is a corporation organized under the laws of England. The home office was at Etruria, Stoke-on-Trent, England; the office and place of business of the American branch was at 255 Fifth Avenue, New York City. The corporation was engaged in the manufacture and sale of earthenware, pottery, and like products, while the American branch was engaged wholly in the sale of these products within the United States and Canada, under the management and direction of K. L. Wedgwood.

Under the terms of an agreement with the home office, the regular salary of K. L. Wedgwood was $4,850. The agreement provided that, in addition to this amount, he should receive 25 per cent of the profits not in excess of £1,000, 33⅓ per cent of the profits in excess of £1,000 and not in excess of £2,000, and 50 per cent of the profits in excess of £2,000. The regular and additional compensation of K. L. Wedgwood for 1918 was fixed and agreed upon during the year by correspondence between him and the officers and manager of the home office in the same manner and by the same method from 1912. The additional compensation for 1918, based upon the varying percentages of profits, and originally computed upon the operating book profits of $20,215.30, amounted to $8,086.81. This latter amount was deducted from gross income in the return for 1918 in computing the tax for that year.

. The books of the American branch for 1918 could not finally be closed until after the approval of its accounts by the home office, based upon the auditor's report prepared for that purpose on March 8, 1919. The American auditor's report was approved by the home

office, except that the home office construed the agreement with K. L. Wedgwood as providing for additional compensation based upon net operating profits, after provision for Federal taxes, in the arbitrary amount of $2,625.90, and, accordingly, allowed such additional compensation to the extent of $6,773.89, the amount now in controversy, computed as follows:

|  | Compensation. |
|---|---|
| 25 per cent on first £1,000 ($4,850) | $1,212.50 |
| 33 ⅓ per cent on second £1,000 ($4,850) | 1,616.67 |
| 50 per cent on balance of profits ($7,889.40) | 3,944.72 |
| Total additional compensation | 6,773.89 |

Under the agreement this compensation was payable upon demand, and K. L. Wedgwood drew the same in the amounts and on the dates following:

| | |
|---|---|
| Jan. 13, 1919 | $2,000.00 |
| Mar. 20, 1919 | 2,000.00 |
| Apr. 28, 1919 | 2,773.89 |
| Total | 6,773.89 |

These withdrawals were entered upon the cash books and corresponding charges were made in the ledger. The taxpayer's accounts were kept upon the accrual basis.

Upon audit of the return for 1918, the Commissioner disallowed the claimed deduction of $6,773.89, upon the ground that no liability was incurred for the additional compensation and that the same was neither paid nor accrued during the year 1918. He also computed the profits tax under section 328 of the Revenue Act of 1918, upon the ground that section 327 (b) of that Act requires the profits tax of every foreign corporation to be determined under section 328. The profits tax computed under the provisions of section 302 of the Revenue Act of 1918 was lower than the tax computed under section 328, and the Commissioner, accordingly, determined the profits tax under section 302.

### DECISION.

The deficiency should be computed in conformity with the following opinion. Final determination will be settled on 7 days' notice, under Rule 50.

### OPINION.

LITTLETON: The questions presented by this appeal are: (1) Whether the additional compensation of $6,773.89 was a legal deduction for the year 1918; and (2) whether the profits tax of a foreign corporation should be computed under the provisions of

section 301 or section 328, subject to the limitations provided in section 302 of the Revenue Act of 1918.

As to the first point, it appears that for several years it had been the practice of the home office in England to enter into an agreement by correspondence with the manager of the American branch for the payment of additional compensation based upon a certain percentage of the profits. During the year 1918 the taxpayer incurred liability for the additional compensation for services actually rendered and the same accrued within that year. Due to the fact that the auditor's report of the American branch had to be approved by the home office, the books were not closed · for some time after the end of the year; and, as the additional compensation for the year was based upon the profits, it was not entered upon the books until the auditor's report had been approved. The auditor's report was completed March 8, 1919; and, before it had been approved, the manager of the American branch made a return for the calendar year 1918 and deducted $8,086.81, which he regarded as the amount of additional compensation to which he was entitled for the year under the terms of the agreement. The home office, however, deducted an amount as Federal taxes before subjecting the profits to percentages for the determination of additional compensation. This resulted in the additional compensation being reduced to $6,773.89, which was the amount disallowed by the Commissioner and now claimed as a deduction under section 234 (a) (1).

The change in the final amount to be paid upon audit of the accounts by the home office did not affect the deductibility of the additional compensation from gross income. It was an ordinary and necessary expense incurred during the year 1918, as compensation for personal services actually rendered, and as such was a legal deduction. Any adjustment in the amount of additional compensation by the home office affected only the amount and not the right to the deduction. *Appeal of American Express Co.*, 2 B. T. A. 498. Whatever change was made in the taxable income as a result of an increase or decrease of the amount of the additional compensation was subject to correction upon audit or by an amended return. *Appeal of Producers Fuel Co.*, 1 B. T. A. 202. The taxpayer should, therefore, be allowed the deduction of $6,773.89. .

The next question is whether the provisions of section 301 of the Revenue Act of 1918 are applicable to foreign corporations, or whether the profits tax of every foreign corporation must be computed under the provisions of section 328 of that Act. By reference to section 230 we find that an income tax at certain rates is imposed upon the net income of *every* corporation, and by reference to sec-

tion 236 we find that only domestic corporations are allowed a credit of $2,000. Section 301 imposing the profits tax provides:

That in lieu of the tax imposed by Title II of the Revenue Act of 1917, but in addition to the other taxes imposed by this Act, there shall be levied, collected, and paid for the taxable year 1918 upon the net income of every corporation a tax equal to the sum of the following:

\*    \*    \*    \*    \*    \*    \*

Section 302 prescribes a limitation upon the tax imposed by section 301, as follows:

That the tax imposed by subdivision (a) of section 301 shall in no case be more than 30 per centum of the amount of the net income in excess of $3,000 and not in excess of $20,000, plus 80 per centum of the amount of the net income in excess of $20,000; the tax imposed by subdivision (b) of section 301 shall in no case be more than 20 per centum of the amount of the net income in excess of $3,000 and not in excess of $20,000 plus 40 per centum of the amount of the net income in excess of $20,000; and the above limitations shall apply to the taxes computed under subdivisions (a) and (b) of section 301, respectively, when used in subdivision (c) of that section. Nothing in this section shall be construed in such manner as to increase the tax imposed by section 301.

Section 304 (b) states that " Any corporation whose net income for the taxable year is less than $3,000 shall be exempt from taxation under this title."

Section 310 defines the pre-war period and section 311, relating to the war-profits credit, declares:

(a) That the war-profits credit shall consist of the sum of:

(1) A specific exemption of $3,000; and

(2) An amount equal to the average net income of the corporation for the prewar period, plus or minus, as the case may be, 10 per centum of the difference between the average invested capital for the prewar period and the invested capital for the taxable year.

\*    \*    \*    \*    \*    \*    \*

(e) A foreign corporation shall not be entitled to a specific exemption of $3,000.

Section 312 defines the excess-profits credit as follows:

That the excess-profits credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per centum of the invested capital for the taxable year.

A foreign corporation shall not be entitled to the specific exemption of $3,000.

The above-quoted provisions, if taken alone, would indicate that Congress intended that the profits tax upon the net income of foreign corporations should be computed under section 301, subject to the limitations provided in section 302, in the same manner as domestic corporations. However, these sections should be construed in the light of other sections under Title III relating to the same subject-matter, and in the light of the changes made in the law as it existed

at the time of the enactment of the Revenue Act of 1918. Section 327 of the 1918 Act reads in part as follows:

That in the following cases the tax shall be determined as provided in section 328:

\*        \*        \*        \*        \*        \*        \*

(b) In the case of a foreign corporation.

Congress further provided for the determination of profits tax in the cases specified in section 327 under section 328 in the following manner:

(a)  \*  \*  \*  In the case of a foreign corporation the tax shall be computed without deducting the specific exemption of $3,000 either for the taxpayer or the representative corporations.

The taxpayer contends that, in the various sections relating to the profits tax preceding section 327, Congress used language clearly embracing both foreign and domestic corporations, specifically mentioning foreign corporations in connection with the tax imposed by section 301, and that subsection (b) of section 327 was for the purpose of bringing foreign corporations within the class of corporations entitled to claim the benefits of the relief provisions of the Act. It further contends that sections 327 and 328 are relief provisions by which Congress was seeking to prevent inequality in taxation due, among other things, to inability satisfactorily to determine invested capital, and where, due to abnormal conditions affecting invested capital or income, exceptional hardship would be worked upon corporate taxpayers.

The Commissioner contends that, notwithstanding the provisions of sections 301, 311, 312, etc., section 327 (b) is mandatory and requires that the profits tax of every foreign corporation shall in every case be computed under section 328, subject to the provisions of section 302.

The question before the Board is, What did Congress really intend to direct? We must seek this intention from the Act taken as a whole and the provisions of the law relating to this question as they existed at the time of the enactment of the Revenue Act of 1918.

Section 207 of the Revenue Act of 1917, after defining invested capital, provided:

In the case of a foreign corporation or partnership or of a non-resident alien individual the term "invested capital" means that proportion of the entire invested capital, as defined and limited in this title, which the net income from sources within the United States bears to the entire net income.

Section 326 of the Revenue Act of 1918, so far as this question is concerned, defines invested capital of corporations in substantially the same manner as section 207 of the Revenue Act of 1917, except that the 1918 Act, as finally enacted, omitted entirely the provision

for the determination of the invested capital of foreign corporations, and provided in section 327, " That in the following cases the tax shall be determined as provided in section 328 : * * * (b) In the case of a foreign corporation; * * *."

By reference to the legislative history of the Revenue Act of 1918, it appears that section 326 of House Bill 12863, as passed by the House, contained the following provision in subsection (d) : " In the case of a foreign corporation the term ' invested capital ' includes only its invested capital used or employed in the United States." Section 327 of that bill contained no provision relative to foreign corporations.

Upon consideration the Senate Finance Committee struck out of the bill subsection (d) of section 326 relative to invested capital of a foreign corporation and amended section 327 relative to cases in which the tax should be computed under section 328 by adding thereto subsection (b) " In the case of a foreign corporation." The bill, as amended by the Finance Committee, was passed by the Senate and went to the Conference Committee of the House and Senate. The conference report relating to this matter stated :

Amendent No. 262: This amendment strikes out the definition provided in the House bill of the invested capital of a foreign corporation (see amendment No. 263), makes clerical changes in the method of computing the invested capital for a fractional part of a year, and defines the average invested capital for the pre-war period; and the House recedes.

Amendment No. 263: The House bill in the so-called " relief provisions " provided that in certain specified cases the invested capital of a corporation shall be the amount which bears the same ratio to the net income of the corporation for the taxable year as the average invested capital for the taxable year of representative corporations engaged in a like or similar trade or business bears to their average net income for such year.

The Senate amendment increases the classes of cases in which the tax is to be fixed by reference to the experience of representative corporations; includes therein all foreign corporations (see amendment 262), and provides that in such cases the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year as the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income (in excess of the specific exemption of $3,000) for such year.

The House recedes with amendments : * * *.

The amendments following the above quotation do not relate to the question here involved.

From the foregoing it appears that it was the intention of Congress that the profits tax of domestic corporations should be computed under section 301 and that the profits tax of all foreign corporations should be computed under the provisions of section 328.

It is apparent from the language of section 302 that its provisions were not intended to apply to the tax computed under the provisions

of section 328. Since the profits tax of a foreign corporation must be computed under the provisions of section 328, the Commissioner erred in applying the provisions of section 302 in his determination of the deficiency involved in this appeal.