John T. Savage and Louise L. Savage v. Commissioner. L and S Homes, Inc. v. Commissioner.Savage v. CommissionerDocket Nos. 3909-68, 3910-68.United States Tax CourtT.C. Memo 1970-158; 1970 Tax Ct. Memo LEXIS 200; 29 T.C.M. (CCH) 690; T.C.M. (RIA) 70158; June 18, 1970, Filed *200 Equal sums of $14,500 were transferred from the checking account of the corporate petitioner herein to each of its two officer-shareholders. Held, such amounts constituted a dividend distribution rather than additional compensation for services rendered by the two officer-shareholders. Consequently, petitioner Savage must treat his share of such distribution as dividend income to the extent of the earnings and profits of the corporation; and petitioner L and S Homes, Inc. is not entitled to a business expense deduction for such distribution during the fiscal years involved herein. John T. Savage, pro se, 4100 Billtown Rd., Jeffersontown, Ky.Frederick W. Krieg, for the respondent. STERRETTMemorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined deficiencies in the petitioners' income taxes in the following amounts for the following years: PetitionersDocket No.Taxable Year EndedDeficiency AmountsAddition to Tax Under Sec. 6651(a)John T. Savage and Louise L. Savage3909-6812-31-63$2,230.09L and S Homes, Inc3910-683-31-62202.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.95$640.24Due to concessions by the parties relating to these deficiency amounts, the sole issue remaining for our decision is *201 whether certain amounts, which were transferred from L and S Homes, Inc. to its two officershareholders in November of 1963, should be treated for tax purposes as compensation for services or as a dividend to the extent of the earnings and profits of the corporation. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. A summary of the salient facts is set forth below. At the time of filing their petition herein, John T. and Louise L. Savage had their residence in Jeffersontown, Kentucky. Their joint Federal income tax return for the calendar year 1963 was filed with the district director of internal revenue at Louisville, Kentucky. L and S Homes, Inc. had its principal place of business in Jeffersontown, Kentucky at the time of filing its petition herein. L and S Homes, Inc. filed its corporation income tax returns for the fiscal years ended March 31, 1962 and March 31, 1963, with the district director of internal revenue at Louisville, Kentucky. Since the incorporation of L and S Homes, Inc. (hereinafter referred to as L and S Homes) as a Kentucky corporation in April of 1959, *202 John T. Savage (hereinafter referred to as Savage) and Milton E. Lukins (hereinafter referred to as Lukins) have each owned 50 percent of the stock of such corporation. Savage and Lukins have always been and are the only officers and directors of L and S Homes. L and S Homes purchases raw land, subdivides such land, engages subcontractors to develop and build low price homes thereon, and sells the improved lots. During the years involved herein, Savage supervised the development and building that was done on behalf of the corporation, and saw that sewers and water were put in, while Lukins was in charge of the sale of the improved property. Both Savage and Lukins devoted their full time and attention to their respective jobs with the corporation during the years in question. Sometime after its formation, L and S Homes purchased 115 lots, which it developed, improved, and sold during the period from 1959 through 1963. The homes built on the lots were sold at prices ranging between $10,000 and $12,000 (i. e., total price for house and lot). During the fiscal year ended March 31, 1962, L and S Homes 691 sold 21 homes for a total selling price of $243,000; and during the fiscal year ended *203 March 31, 1963, 17 homes were sold at a total sales price of $191,000. Soon after the formation of L and S Homes in 1959, Savage and Lukins agreed to compensate themselves $150 each per house (approximately 1 1/2 percent of total sales price per house) for their services to the corporation. The minutes of the first meeting of the board of directors of L and S Homes provided in part: On motion duly made and carried, there shall be a commission or fee of $150.00 per unit paid to Milton E. Lukins, and the same amount per unit paid to John T. Savage. Savage and Lukins felt that their services entitled each of them to a fee or commission of 5 percent of the total selling price of each house, but agreed that in order to maintain the solvency of the corporation it was necessary to compensate themselves with the lesser amount. There has never been a board of directors' resolution or any other formal authorization for an increase in the $150 per house fee or commission paid to both Savage and Lukins. On November 21, 1963, checks were drawn on the L and S Homes' checking account transferring $14,500 each (i. e., a total of $29,000) to Savage and Lukins. Both checks were paid by the Citizens *204 Fidelity Bank & Trust Co., Louisville, Kentucky on November 22, 1963. Savage and Lukins each signed separate but identically worded notes dated November 22, 1963, which provided the following: On demand, I agree to pay to L & S Homes, the sum of ($14,500.00) Fourteen Thousand, Five hundred and no/100 dollars with no interest from date. The check stubs corresponding to the aforementioned $14,500 checks both bear the notation "Note." On a page entitled "Misc. Pg. 1" taken from the corporation's records the explanation "stock note" appears beside a listing of the two $14,500 checks. At the time of trial, the $14,500 transfer to Savage was still being carried on the corporate books as an obligation owed to L and S Homes. On their joint Federal income tax return for the calendar year 1963, Savage and his wife did not include in gross income or otherwise report the $14,500 amount transferred from L and S Homes to Savage on November 22, 1963. In its corporation income tax returns for the fiscal years ended March 31, 1962, and March 31, 1963, L and S Homes did not claim any deduction for officer's compensation. On February 3, 1965, L and S Homes filed amended corporation income tax returns *205 for the fiscal years ended March 31, 1962, and March 31, 1963, but did not take an officer compensation deduction for or otherwise reflect the $14,500 transferred to Savage or the $14,500 transferred to Lukins. L and S Homes has always operated on the accural method of accounting. Opinion This case presents for our determination the question of whether the transfer of November 1963 from I and S Homes to its officer-shareholders (Savage and Lukins) should properly be characterized as compensation for services or a dividend distribution. 1 Respondent maintains that such amount should be accorded dividend treatment to the extent of earnings and profits ($10,751.66); whereas, the petitioners contend that it represents compensation of $11,000, with the remainder being a return of capital. Regardless of whether it is determined that the $14,500 amount constitutes a dividend or compensation, the tax consequences as to Savage are substantially the same, 2*207 that is, either compensation income or dividend income would be includable within Savage's gross income as that term 692 is defined under section 61 (a) 3 of the Internal Revenue Code of 1954.4*208 Hence, the crux of the controversy between the *206 parties centers upon the tax consequences to L and S Homes. If the transfer at issue is found to be compensation, L and S Homes would be entitled to an ordinary and necessary business expense deduction under section 162(a) (1). 5 On the other hand, if such transfer is characterized as a dividend distribution, L and S Homes would reduce its earnings and profits as provided under section 312, but would not receive any deduction therefor. Petitioners have abandoned all previously advanced theories that the transfer in question constituted a loan or a partial liquidation. Although the petitioners' position is not clearly articulated in the muddled record before us, they apparently contend that L and S Homes is entitled to accrue and to deduct during the fiscal years ended March 31, 1962, and March 31, 1963, 6*210 the total amount of $22,000 (i. e., $11,000 out of each of the two $14,500 transfers) on the ground that such amount represents a liability on the part of the corporation for officers' compensation due as a result of services rendered by Savage and Lukins during said fiscal years. In support thereof, petitioners introduced into evidence the testimony of Savage and petitioners' accountant, John D. Lynch (hereinafter referred to as Lynch), to the effect that Savage and Lukins from the time of the formation of L and S Homes felt that their services were worth a 5 percent fee or commission, but due to the corporation's poor cash *209 position decided to undercompensate themselves in the amount of $150 per house. The petitioners apparently arrived at the $22,000 amount that they allege to be accruable by multiplying 10 percent (5 percent commission each for Savage and Lukins) times the total sales price of the 38 homes sold during the fiscal years ended March 31, 1962, and March 31, 1963, less the $150 per house commission or fee previously paid Savage and Lukins during such years. 7 After careful consideration of the entire record and the legal principles applicable to the issue involved herein, we have concluded that we cannot accept the petitioners' position. First, a review of the record herein creates grave doubts in our mind as to whether the amounts transferred in November of 1963 were intended or paid as compensation. On November 22, 1963, (the day the two $14,500 checks drawn on L and S Homes' checking account were paid by the bank), Savage and Lukins each signed notes agreeing to repay L and S Homes the $14,500 on demand. The check stubs corresponding to the two $14,500 checks each bear the notation "Note," and a page taken from the corporation's records contains the explanation "stock note" beside a listing of the two $14,500 checks. More-over, in its corporation *211 income tax returns for the fiscal years at issue, L and S Homes did not treat the $14,500 transfer to Savage or the $14,500 transfer to Lukins as deductible officer-compensation expense. As late as February 3, 1965, L and S Homes filed amended corporation income tax returns for the fiscal years at issue and did not claim an officer-compensation 693 deduction for or otherwise reflect the transfer of $14,500 to each of its two officer-shareholders. Indeed, Savage even testified at the trial of the instant case that the transfer of $14,500 to him was at that time being carried as an obligation owed to the corporation. The foregoing facts and evidence of record cause us to suspect that it occurred to petitioners merely as an after-thought to characterize the amount in question as compensation. This suspicion is confirmed by the following excerpt from the testimony of Savage at the trial of this cause: SAVAGE: * * * Having amended the returns, in order to clear ourselves up we had to then go to the bank and borrow money to pay those taxes which Mr. Lukins and I are personally liable for today. Then we discovered we'd be in a better tax position if we had compensated ourselves in line with *212 ordinary compensation, so we then asked for permission to amend the amendments * * *. In order to qualify an amount for deduction under section 162(a) (1) as compensation for services rendered, a showing that such amount was indeed intended and paid as compensation during the years for which the deduction is sought would seem to be necessary. See section 1.162-7, Income Tax Regs. Such a showing has not been made by petitioners in the case at bar. Even assuming arguendo that the amounts transferred to Savage and Lukins in November of 1963 were intended and paid as compensation, we do not believe such amounts are accruable and deductible by L and S Homes during its fiscal years ended March 31, 1962, and March 31, 1963. In general, an accrual basis taxpayer must accrue compensation in the year that the liability to make payment becomes fixed. See section 1.446-1(c) (1) (ii), Income Tax Regs. Before it can be said that the liability has become fixed, there must be present during the year in question corporate action authorizing the payment of an ascertainable amount of compensation. E. B. & A. C. Whiting Co.10 T.C. 102, 118-119 (1948); and Bailey Dental Co. of Iowa, 11 B.T.A. 860, 861 (1928). *213 Such authorization need not be formal, but instead may consist of an informal agreement or understanding among the corporate directors that a definite or ascertainable amount of compensation will be paid during the year. L. Friedman Neckwear Corporation 15 B.T.A. 61, 63-64 (1929); and Joseph O Brien Leather Finish Corporation, 8 B.T.A. 521, 522 (1927). The record herein falls short of the requisite proof of a fixed liability obligating L and S Homes to pay a 5 percent builder's fee to Savage and a 5 percent sales commission to Lukins for services performed by them during the fiscal years ended March 31, 1962, and March 31, 1963. A resolution was passed at the first L & S Homes board of directors' meeting authorizing the payment of a $150 per house fee or commission to Lukins, and payment of an equal amount to Savage. There has never been a board of directors' resolution or any other formal authorization increasing the $150 per house fee or commission paid to Savage and Lukins. Savage did testify that it had always been the intention of himself and Lukins to compensate themselves with the 5 percent commission, but that as a result of the poor cash position of L and S Homes they had *214 decided on the $150 per house figure. It is also apparent from Savage's testimony that not until sometime after February 3, 1965 (i. e., the date amended corporation income tax returns were filed on behalf of L and S Homes) was it discovered that the corporation did have enough cash to pay additional compensation for the fiscal years at issue. Thus, it seems clear that nothing more than an intention existing in the minds of Savage and Lukins to pay a 5 percent commission whenever financially feasible was present during the fiscal years involved herein. It is doubtful whether a rather vague intention of this sort qualifies as informal corporate action, and it is manifest that such an intention fails to provide the definiteness of obligation and certainty of amount required to fix the corporation's liability to pay additional compensation during the fiscal years at issue. Fourth Avenue Amusement Co. v. Glenn, 201 F. 2d 600, 605-606 (C.A. 6, 1953); and Indiana Rubber & Insulated Wire Co., 20 B.T.A. 1201, 1203-1204 (1930). Petitioners rely upon Mobile Drug Co. v. United States, 39 F. 2d 940 (S.D. Ala. 1930); Perkins Land Lumber Co., 9 B.T.A. 528 (1927); Osborne & Clark Lumber Co., 8 B.T.A. 382 (1927); *215 Josiah Wedgwood & Sons, Ltd., 3 B.T.A. 355 (1926); and Henry Myer Thread Manufacturing Co., 694 2 B.T.A. 665 (1925). We find these cases to be readily distinguishable from the case at bar. While the precise amount of additional compensation was not always determined in these cases until after the taxable year at issue, in each case corporate action was taken during such taxable year fixing a definite obligation on the part of the corporation to pay additional compensation in an ascertainable amount. Petitioners also address themselves to the reasonableness of a 5 percent commission as compensation for the services performed by Savage and Lukins. Under our view of the case, the question of reasonableness of the compensation is never reached because petitioners have failed to show that the amounts in question were indeed intended and paid as compensation, or that in any event the corporation was entitled to accrue and deduct such amounts during the fiscal years at issue. In view of the foregoing we are constrained to sustain respondent's determination that such transfer represented a dividend distribution to the extent of the earnings and profits of L and S Homes. There is support in *216 the record for such determination inasmuch as the distribution was made pro rata to the two shareholders of the close corporation. In view of the foregoing, we hold that the $14,500 amount transferred to Savage should be treated as dividend income to the extent of L and S Homes' earnings and profits; and that L and S Homes is not entitled to a business expense deduction as a result of the transfer to Savage and Lukins during its fiscal years ended March 31, 1962, and March 31, 1963. Due to concessions made by both parties with respect to other adjustments in the deficiency notices, Decision will be entered under Rule 50. Footnotes1. Lukins is not a party to this proceeding, and consequently, we do not have the question before us as to whether the $14,500 transfer to him should be treated in his individual income tax return as compensation income or dividend income. However, L and S Homes does seek to deduct a portion of the $14,500 transfer to Lukins as an ordinary and necessary business expense for fiscal years which are involved herein. Thus, the transfer to Lukins is in issue herein with respect to the deduction side of the transaction. ↩2. The only material difference is a slight variance in the amount that Savage would report as ordinary income and the amount that he would treat as a return of capital. If respondent's determination is sustained, Savage would report $10,751.66 as ordinary income pursuant to secs. 301(c) (1) and 61(a) (7), I.R.C. 1954, and the balance of $3,748.34 would be treated under sec. 301(c) (2), I.R.C. 1954, as a return of capital to be applied against and in reduction of the adjusted basis of his stock, or if the $3,748.34 amount exceeds his adjusted basis of the stock, the excess will be treated as gain from the sale or exchange of property under sec. 301(c) (3), I.R.C. 1954. If the petitioner's position proves to be the correct one, Savage would include $11,000 in his gross income under sec. 61(a) (1), I.R.C. 1954↩, and the balance of $3,500 would be treated as a return of capital. 3. SEC. 61. GROSS INCOME DEFINED. (a) GENERAL DEFINITION. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; * * * (7) Dividends; ↩4. Unless otherwise specified, all future statutory references will be to the Internal Revenue Code of 1954. 5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩6. A statement in the petitioners' brief indicates that L and S Homes now seeks to claim this deduction in its corporation income tax return for the fiscal year ended March 31, 1964 (i. e., the year of payment rather than the year the services were performed). This is contrary to the petition filed by L and S Homes in this case wherein the assignments of error only place in issue respondent's determination with respect to the fiscal years ended March 31, 1962, and March 31, 1963. Inasmuch as we have no jurisdiction over the income tax liability of L and S Homes for the fiscal year ended March 31, 1964, we are powerless to pass upon petitioners' contention regarding the deductibility of the transfers involved herein in that fiscal year. 7. Lynch testified that this was the formula used to arrive at the $22,000 figure. However, there appears to be a mathematical error somewhere therein, e.g., 10 percent X $434,000 (total sales price of 38 homes sold by L and S Homes during fiscal years ended March 31, 1962, and March 31, 1963) = $43,400 minus $11,400 ($150 per house fee previously paid Savage and Lukins) = $32,000 instead of $22,000.↩