## HARROLD v. COMMISSIONER OF INTERNAL REVENUE.

## CROMLING v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 6286, 6287.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1951.

Decided Dec. 7, 1951.

Harry Friedman, Washington, D. C., for petitioner.

Louise Foster, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and A. F. Prescott, Special Asst. to the Atty. Gen., on brief), for respondent.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These are petitions to review orders of the Tax Court involving income tax for the year 1945, upholding the Commissioner of Internal Revenue's disallowance of a deduction of $25,210.18, and asserting a deficiency against taxpayer Harrold in the amount of $12,935.95 and taxpayer Cromling in the amount of $11,458.04.

During the taxable year and prior thereto, the taxpayers were partners doing busi-

ness under the firm name of Cromling & Harrold and were engaged in the mining of bituminous coal from leased lands by the strip mining method. This is a process whereby the soil or overburden is removed so that the coal can be mined with shovels. The partnership kept its books and filed its federal income tax returns on the accrual basis.

In 1945 the partnership removed coal by the strip mining method from 31.09 acres of land in West Virginia held by it under five leases and contracts which required it to conduct the mining operations in conformity with the laws of West Virginia and of the United States, and to restore and replace the surface in compliance with provisions of pertinent laws of West Virginia. Before starting mining operations on the leased lands, the partnership obtained strip mining permits as required by the laws of West Virginia, and posted penal bonds with the state to insure faithful performance of its statutory obligation to refill the lands. The contractual and statutory obligation on the partnership to "backfill" required it to put the soil back the way both the state and the lessor farmers wanted it. It was necessary to fertilize and replant the land with grass, shrubs or clover before the Department of Mines of West Virginia would release the bonds.

At the end of 1945 the tract of 31.09 acres had been completely stripped and the coal had been removed; and the obligation of the partners to refill had become fixed and definite. Paul Harrold, one of the partners, had been actively engaged in strip mining and back-filling lands in West Virginia for sixteen years. Based on this experience the firm estimated in 1945 that the cost of the refill in this instance would amount to $1,000 per acre; but since the firm was using its equipment in stripping operations elsewhere it postponed the refilling until 1946, and in accord with sound accounting practice set up a reserve on its books for the accrued expense involved in the sum of $31,090 and deducted the same as an expense of the business in its federal income tax for 1945.

The process of back-filling was commenced in the spring of 1946, when the weather became favorable, and was completed during 1946 at a cost of $25,210.18 or $5,879.82 less than estimated and accrued. Accordingly the partnership reduced the 1945 accrual on its books, and, on lJanuary 6, 1947, filed an amended partnership return for the taxable year 1945, reducing the estimated deduction to the actual cost of back-filling the land.

The Tax Court, conceding that it was the practice of prudent business men to set up reserves to cover contingent liabilities, nevertheless held that deduction from income in 1945 could not be allowed because the liability which it represented was not fixed and certain, but was based merely on an estimate of the future cost of the work. In support of this conclusion it pointed out that the cardinal rule in the federal income tax system is that net income must be computed and taxed on an annual basis so as to provide revenue to the government at regular intervals; and hence neither income nor deduction may be accelerated or postponed from one taxable year to another in order to reflect the ultimate result of a business transaction; and this principle must be observed, even though the allocation of an indefinite obligation to the taxable year in a given instance would seemingly work a more equitable result to the government or the taxpayer. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 363, 51 S.Ct. 150, 75 L.Ed. 383; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L. Ed. 725.

Accordingly it is established that deductions may be taken on an accrual basis only in the year in which the taxpayer's liability to pay has become fixed and certain; and in some decisions, notably Security Flour Mills Co. v. Com'r, 321 U.S. 281, 286–287, 64 S.Ct. 596, 88 L.Ed. 725, and Dixie Pine Products Co. v. Com'r, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 420 it has been said that unless the amount as well as the fact of liability has become final and definite in the year in which the accrual is claimed, the deduction must be allowed only in the year in which the payment actually takes place. It is true that in these cases the court was concerned with the existence rather than the amount of the liability; but

in other decisions uncertainty of the amount alone has been held enough to bar the accrual of the expense in the year in which the liability therefor has become established. Thus in Spencer, White & Prentis v. Com'r, 2 Cir., 144 F.2d 45, a contractor, under an obligation to restore certain structures in the streets of New York which had been disturbed or destroyed in the construction of a subway, was not allowed to accrue the estimated cost of restoration in a tax year prior to the doing of the work; and in Capital Warehouse Co. v. Com'r, 8 Cir., 171 F.2d 395, a warehouseman, who collected from customers upon the receipt of goods for storage, a charge for the removal of the goods subsequently to take place, was not allowed to accrue in advance the cost of the removal operation based on the experience of other warehousemen, that 60 per cent of the cost should be allocated to the expense of handling out and 40 per cent. to the expense of handling in, owing to the fact that merchandise usually came into the warehouses in carload lots and left in less than carload lots. The experience of the taxpayer, however, differed in that in its case the merchandise was shipped out in carload lots.

■ There is no material distinction between Spencer, White & Prentis v. Com'r, supra, and the pending case unless it be that in the former an approximate estimate of the cost of the work of restoration, considering the number and unusual character of the items involved, could not be easily arrived at before the work was undertaken. In any event, we think that the ability to make an approximate estimate should be the determining factor in each case, rather than the literal application of the formula that an asset or a liability may not be accrued in any taxable year prior to its liquidation, unless both the existence and the amount thereof is fixed and certain.

■ As to the need for the existence of a definite asset or liability to justify an accrual in the taxable year, there can be no doubt as many decisions attest; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; but it has not been deemed essential that the amount of an accrued liability shall have been definitely ascertained to justify deduction from income in the taxable year. Confessedly, it is enough if the facts from which the amount can be calculated had then occurred and are later ascertained, or as Judge Learned Hand puts it in Uncasville Mfg. Co. v. Com'r, 2 Cir., 55 F.2d 893, 895, if the computation, although unknown, is not unknowable at the end of the year. Such was the situation before the court in Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S. Ct. 529, 76 L.Ed. 1111, where the amount of a government award was not ascertained until 1923, but it was held that the right of the taxpayer thereto having ripened in 1920, it should have been returned in an estimated amount as part of the income for that year. To the same effect was the decision of this court in Baltimore & Ohio R. Co. v. Com'r, 4 Cir., 78 F.2d 456.

■ Again it has been held that a liability may be accrued as a fixed obligation on the taxpayer's books and taken as a deduction from income when it is definitely incurred, although it is known at the time that the amount may be diminished by subsequent events. American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; Ohmer Register Co. v. Com'r, 6 Cir., 131 F.2d 682, 143 A.L.R. 1164.

It is not suggested that the pending case falls precisely within either of the two categories last described. They serve to show, however, that the accrual of the approximate amount of an item that comes into existence in a taxable year to be followed by appropriate adjustments when the precise amount is ascertained, is not deemed impracticable by the taxing authorities or inconsistent with the principle that income and outgo must be computed and taxed on an annual basis. Moreover, decisions of the courts, including the Tax Court itself, furnish examples of the allowance of a reasonably accurate estimate of the cost of meeting a liability as a proper deduction from income of a taxpayer on the accrual basis, even when the work is not done and the precise cost is, therefore, not ascertainable until after the expiration of the fiscal

year. The matter is discussed and clarified by Justice Brandeis in Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L. Ed. 538, where he held that a corporation, which had broken a contract with a sales manager employed on a commission basis, could not accrue its liability on its books pending the termination of a suit for damages for breach of the contract. He said, 280 U.S. at pages 449–450, 50 S.Ct. at page 203:

"Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." * * *

"* * * The Board of Tax Appeals has held, in a series of well-reasoned opinions, that a loss occasioned by the taxpayer's breach of contract is not deductible in the year of the breach, except under the special circumstances where, within the tax year, there is a definite admission of liability, negotiations for settlement are begun, and a reasonable estimate of the amount of the loss is accrued on the books."

In a note appended to this text, 280 U.S. at page 450, 50 S.Ct. at page 203, a number of decisions of the Board of Tax Appeals are cited which relate to the right of a taxpayer to take a deduction for a loss due to breach of contract on its part. Deduction in the taxable year was disallowed in most of them because the taxpayer denied liability at that time and settlement was not made until a subsequent year. But where liability was admitted, and the amount thereof was reasonably predictable in the tax year, deduction in that year of the precise sum subsequently arrived at was allowed. Producers Fuel Co., 1 B.T.A.

202; Raleigh Smokeless Fuel Co., 6 B.T.A. 381; Fraser Brick Co., 10 B.T.A. 1252. Subsequent decisions follow the same rule. See Moloney Electrical Co., Docket 105, 167, 1942. Board of Tax Appeals Memorandum Decisions P.H., Par. 42, 405; Towers Warehouses, Inc., 6 T.C.M. 59, (1947); J. B. Jemison, 18 B.T.A. 399; Bonnie Bros., Inc., 15 B.T.A. 1231, 1232; W. J. Burns, 12 B.T.A. 1209; Beacon Coal Co., 9 B.T.A. 280; Max Kurtz, 8 B.T.A. 679; Josiah Wedgwood & Sons, Ltd., 3 B.T.A. 355; cf. Atlas Mixed Mortar Co., 23 B.T.A. 245, where the taxpayer was denied a deduction for the estimated cost of refilling land, which it was obligated to do, because it was not shown in the tax year that the amount which it would have to do was reasonably predictable, or that the amounts claimed were approximate estimates of the liability.

Again the subject was discussed by Justice Brandeis in Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725, where it was held that a general agent of an insurance company, who was paid an overriding commission on the business written each year subject to partial repayment in case of subsequent cancellation of the policy, could not accrue and deduct an estimated amount to cover these cancellations since the agent's right to receive the commission in the first place was absolute while the deduction was based on an uncertain contingency. In the course of the opinion he said, 291 U.S. at page 200, 54 S.Ct. at page 359:

"It is true that, where a liability has 'accrued during the taxable year,' it may be treated as an expense incurred; and hence as the basis for a deduction, although payment is not presently due, United States v. Anderson, 269 U.S. 422, 440, 441, 46 S.Ct. 131, 70 L.Ed. 347; American National Ins. Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L. Ed. 234, and although the amount of the liability has not been definitely ascertained. United States v. Anderson, supra.[6]"

"[6]. See also Uncasville Mfg. Co. v. Com'r, 2 Cir., 55 F.2d 893, 895; Ocean Accident & Guarantee Corp. v. Com'r, 2 Cir.,

1006

47 F.2d 582. Compare Com'r v. Old Dominion S.S. Co., 2 Cir., 47 F.2d 148."

In Ocean Accident & Guarantee Corp. v. Com'r, cited in the above note, it was held that the estimate of an insurance company of liability likely to arise in subsequent years by reason of accident or injury covered by its insurance policies was sufficiently accurate to warrant a deduction from income in the current year, although obviously the facts were neither known nor knowable in that year. The estimate, however, was accepted as a valid basis for the accrual because it took into account all of the policies issued by the taxpayer, and was therefore an aggregate of the estimates of policy losses likely to occur which past experience had shown was accurately predictable.

■ We conclude that when all the facts have occurred which determine that the taxpayer has incurred a liability in the tax year, and neither the fact nor the amount of the liability is contested, and the amount, although not definitely ascertained, is susceptible of estimate with reasonable accuracy in the tax year, deduction thereof from income may be taken by a taxpayer on an accrual basis. This procedure does not violate the principle that income taxes must be calculated on an annual basis, but, on the contrary, allocates to each year the proper income and expense, and prevents distortion of the taxpayer's financial condition in the tax year. See United States v. Anderson, 269 U.S. 422, 440, 46 S.Ct. 131, 70 L.Ed. 347. It gives heed to the true facts of each case rather than to an arbitrary rule of thumb; and the adjustments which must be made after the precise amount is ascertained are as easily consummated as those which are required when it is impracticable to make precise calculations of income or outgo before the end of the year, although all of the events which fix the amount have accrued therein. We think the proper approach to the problem before us should be realistic and one that accords with good business practice, rather than an approach based upon subtle technicalities.

The decision of the Tax Court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.