PATSCH
v.
COMMISSIONER OF INTERNAL
REVENUE (six cases).

PATSCH et al.
v.
COMMISSIONER OF INTERNAL
REVENUE (three cases).
Nos. 11089–11097.

United States Court of Appeals
Third Circuit.
Argued Oct. 20, 1953.
Decided Dec. 17, 1953.

Sidney Hoffman, Canonsburg, Pa. (William Wallace Booth, Pittsburgh, Pa., Adolph L. Zeman, Canonsburg, Pa., on the brief), for petitioners.

Louise Foster, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The petitioners [1] in this consolidated proceeding to review nine decisions of the Tax Court are members of a Pennsylvania mining partnership which was engaged during the tax years 1946, 1947 and 1948 in the business of mining coal by the open pit or strip mining method in Washington County, Pennsylvania. In mining coal under this process, the strata which overlie the coal deposit in its natural condition are removed so that the coal can be mined with shovels. In mining coal by this method it is not feasible or economically practical to backfill as

1. For the year 1948 the petitioners and their wives filed joint returns and hence are joined as petitioners for that year.

mining progresses. Therefore, generally backfilling is done after all the coal has been removed from a particular tract. Under the Bituminous Coal Open Pit Mining Conservation Act of Pennsylvania,[2] within one year after a strip mining operation is completed the operator is required to cover the exposed face of the unmined coal in the open cut and to level and round off the spoilbanks to such an extent as will permit the planting of trees, shrubs or grasses, and within three years the operator is required to replant the land affected by the mining. The partnership owned both the surface and coal in some of the areas it mined. It operated in other areas under lease agreements. Each of these lease agreements contained a provision whereby the partnership agreed to conform to the laws of Pennsylvania.

On January 10, 1946 the petitioners formed the partnership here involved. Its books were kept on the accrual basis. During 1946 the partnership removed approximately 162,065 tons, or 20.665 acres, of coal from an area known as the Allison Farms tract. The partnership estimated a backfilling cost of 10¢ per ton in respect of this coal and accordingly charged $16,206.55 on this account against its gross income for 1946, crediting this amount to a Back Fill Reserve account on its books. During 1947, approximately 168,401 tons, or 25.35 acres, of coal were mined. In that year the partnership charged $15,735.40 for backfilling expense, at the rate of 25¢ per ton based only on 62,941 tons, or 8 acres, removed from the Allison Farms tract, crediting that amount to the Back Fill Reserve. It made no backfilling charge with respect to 105,460 tons, or 17.35 acres, of coal mined in that year from other tracts. During 1948, approximately 111,779 tons, or 18.5 acres, of coal were taken from various tracts, other than the Allison Farms tract which was not mined in that year, and 10¢ per ton estimated backfilling cost, totalling $11,-175.32, was charged against gross income and credited to the reserve account. No backfilling was actually done during 1946. During 1947 $6,932.48 was expended in backfilling on the Allison Farms tract. During 1948, a total of $4,377.48 was spent for backfilling work. $2,737.48 of this was for work on the Allison Farms tract and $1,640.00 for backfilling on two other tracts, one of which had been mined in 1947 and 1948 and the other in 1948 only. By 1949 all the partnership's stripping operations were finished but all the backfilling and restoration work had not been completed by December, 1951 when the Tax Court hearing was held. In the years 1949, 1950 and 1951 (up to October 1) a total of $22,712.98 was expended by the partnership for backfilling work.

In 1950 the petitioners sought to increase from 10¢ to 25¢ a ton the estimated backfilling charge which the partnership had made for the year 1946. This amounted to an increase of $24,309.70 in the estimated backfilling expense with respect to that year. The petitioners accordingly filed claims for the refund of so much of the 1946 tax paid by them as would be refundable if this additional expense were allowed. The Commissioner of Internal Revenue denied the claims for refund and disallowed the entire amounts estimated for the years 1946, 1947 and 1948 for backfilling expense, allowing only the actual amounts expended therefor during 1947 and 1948. The petitioners appealed to the Tax Court from the resulting deficiencies in tax. The Tax Court affirmed, determining that the deductions for estimated backfilling expense for 1946, 1947 and 1948 were not allowable because all the events had not occurred during those years which determined the partnership's liability to pay or which fixed the cost of backfilling. 19 T.C. 189. On the present review the petitioners contend that the Tax Court erred because under the Pennsylvania law the partnership during the year in which the coal was mined became legally liable to backfill the areas

---

2. 52 P.S.Pa. §§ 1396.1–1396.20.

from which it had been taken, and, therefore, was entitled under Section 23(a) of the Internal Revenue Code, 26 U.S.C. to deduct as an accrued expense incurred during the taxable year the estimated cost of backfilling and credit the amount to a reserve account, as it did. The Commissioner on the other hand contends that at most the partnership, during the year of operation, incurred a general obligation to perform certain restoration work which did not mature into a deductible expense until the amount became fixed and definite.

The petitioners rely in support of their contention upon the opinion of the Court of Appeals for the Fourth Circuit in Harrold v. Commissioner of Internal Revenue, 1951, 192 F.2d 1002, a case which involved a similar contention by strip coal mining operators that they were entitled to deduct as an accrued expense, for income tax purposes, the estimated amount of the cost of backfilling in later years the areas which they had strip mined during the taxable year. In that case Judge Soper stated the applicable rule as follows 192 F.2d at page 1006:

"We conclude that when all the facts have occurred which determine that the taxpayer has incurred a liability in the tax year, and neither the fact nor the amount of the liability is contested, and the amount, although not definitely ascertained, is susceptible of estimate with reasonable accuracy in the tax year, deduction thereof from income may be taken by a taxpayer on an accrual basis. This procedure does not violate the principle that income taxes must be calculated on an annual basis, but, on the contrary, allocates to each year the proper income and expense, and prevents distortion of the taxpayer's financial condition in the tax year. See United States v. Anderson, 269 U.S. 422, 440, 46 S.Ct. 131, 70 L.Ed. 347. It gives heed to the true facts of each case rather than to an arbitrary rule of thumb; and the adjustments which must be made after the precise amount is ascertained are as easily consummated as those which are required when it is impracticable to make precise calculations of income or outgo before the end of the year, although all of the events which fix the amount have accrued therein. We think the proper approach to the problem before us should be realistic and one that accords with good business practice, rather than an approach based upon subtle technicalities."

We are in complete accord with the rule of law thus stated and with the application which our brethren of the Fourth Circuit made of this rule of law to the facts of the Harrold case. In that case the taxpayers strip mined a tract of 31.09 acres of coal in 1945, the taxable year involved, estimated that the cost of backfilling the tract as required by the law of West Virginia would be $1,000 per acre, a total of $31,090, and deducted this amount as an accrued expense for the taxable year 1945. It turned out that the cost of doing the work in 1946 actually amounted to only $25,210.18 or $5,879.82 less than estimated. But the estimate was made by one of the taxpayers, a man with 16 years experience in strip mining and backfilling in West Virginia and, what is of primary significance, the estimate was based upon his appraisal of the true facts of the case, that is, the probable cost of backfilling the specific 31.09 acres which had been stripped during the year. Thus the figure claimed, while it turned out to be a little high, was a reasonably accurate estimate of the cost of backfilling the tract in question, a liability which the law had imposed upon the taxpayers as a result of their 1945 strip mining operations.

In the cases before us, however, we agree with the conclusion of the Tax Court that "the evidence does not establish that the reserves set up represented a reasonable estimate of the cost of backfilling." For here there was no effort by the partnership to estimate each year

the probable cost of backfilling the actual areas strip mined during the year. There is no evidence that any consideration was given to the facts with respect to the depth of overburden to be replaced, the distance it was to be moved, the drainage conditions and the other physical factors with respect to the specific areas of strip mining which were involved in the taxable year for which the estimate was made. Such factors, as well as the economic factors of labor costs and availability of machinery, would certainly have to be considered in formulating a reasonably accurate estimate of the cost of backfilling specific areas in which strip mining had been completed. In other words a so-called estimate of the backfilling cost of a strip mined area could hardly comply with the rule of the Harrold case unless it was calculated in the light of the actual facts and conditions of that particular area.

Here the estimates relied on by the petitioners were based solely on an arbitrary rule of thumb—a figure of 10¢ (25¢ in the case of the Allison Farms tract in 1947 only) per ton of coal mined. The tonnage of coal mined, however, was not the significant factor. For there might well be a thick seam of coal under a shallow overburden, or vice versa. Also the use of the uniform tonnage rates over a period of years itself shows a lack of effort by the petitioners to tailor their estimates to the actual facts as to backfilling liability incurred in each specific taxable year. Moreover the recital of the facts set out in the opinion of the Tax Court convincingly demonstrates that the partnership's estimates did not in fact turn out to be within a reasonable range of accuracy. Finally there was an indication that at least some of the contractors engaged by the partnership to do the strip mining on some tracts also agreed to do, and did, the required backfilling. As to these tracts it is clear that the partnership itself incurred no accruable liability for the cost of backfilling. The extent of the liability thus assumed by contractors is not shown by

the evidence, however, but its existence, undefined as to extent, still further impeaches the accuracy of the estimates relied on by the petitioners. Those estimates clearly do not pass the test of the Harrold rule.

The decisions of the Tax Court will be affirmed.