OHIO RIVER COLLIERIES COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13483–78.    Filed December 31, 1981.

*Robert E. Glaser, E. Morgan Maxwell III,* and *William W. Wehr,* for the petitioner.
*Jack E. Prestrud,* for the respondent.

## OPINION

NIMS, *Judge*: Respondent determined deficiencies in petitioner's income tax for the tax year ending June 30, 1975, in the amount of $112,515.67. Petitioner claims an overpayment of income tax in the amount of $85,166.80 for such year.

Due to concessions by the petitioner, the only issue remaining for decision is whether petitioner, an accrual basis taxpayer, may deduct the reasonably estimated expenses necessary to satisfy its obligation under Ohio law to reclaim strip-mined land in the year it incurred the obligation.

The facts of this case are fully stipulated. The stipulation and its attached exhibits are incorporated herein by reference.

Petitioner, an Ohio corporation, maintained its principal

office in Bannock, Ohio, at the time the petition in this case was filed.

Petitioner, at all relevant times, was an accrual basis taxpayer. It regularly kept its records using the accrual method of accounting.

Ohio River Collieries Co. (hereinafter petitioner) strip-mined coal exclusively in Ohio. Strip mining involves the removal of topsoil and the overburden from above the coal seam, followed by removal and sale of the coal and reclamation of the affected area.

In April 1972, Ohio enacted a comprehensive reclamation statute which regulated the strip mining of coal during the tax year before us.[1] Operators needed a strip-mining license before they could strip-mine coal. The State issued a license only after it approved a plan for mining and reclamation and after the operator deposited a surety bond payable to the State if the operator failed to perform (inter alia) its reclamation duties.

The Ohio law details requirements for refilling, grading, resoiling, and planting mined areas. These activities, except planting, had to be completed within 12 months after mining ceased. Reclamation also was required as mining progressed, whenever possible. Planting had to occur in the next appropriate season following completion of refilling, grading, and resoiling. Status reports by the operator and periodic inspections by the State monitored compliance.

The operator's bond was for payment of an amount of money equal to the estimated cost to the State to perform the reclamation required by the statute. The bond would not be released until the State was satisfied that the operator had fulfilled its reclamation duties.

If an operator failed to perform any of its reclamation obligations, the State reclaimed the land and satisfied its costs from the fund created by the bond. If the costs exceeded the funds available from the bond, then the operator was personally liable for the amount of money required to complete the reclamation.

Operators violating the Ohio reclamation law also faced potential civil and criminal penalties.

---

[1]Ohio Rev. Code Ann. ch. 1513 (Page 1978).

Ohio has required full compliance with the law at all times since the statute's enactment.

Petitioner performed its reclamation duties within the time required by the law. Petitioner did substantially all of the reclamation work itself.

The petitioner's estimate of the cost of reclamation work required by the reclamation law, but not accomplished as of June 30, 1974, was $150,527.86. The petitioner's estimate of the cost of reclamation work required by the reclamation law, but not accomplished as of June 30, 1975, was $397,883. The parties stipulate that these estimates were determined with reasonable accuracy.

All of the reclamation work required by Ohio law, but not accomplished as of June 30, 1974, was completed by petitioner during the fiscal year ended June 30, 1975. Consequently, the estimate for work not accomplished as of June 30, 1975, is the unfinished reclamation obligation arising from the strip mining which occurred during the tax year ended June 30, 1975.

Petitioner accrued on its books, and claimed as a deduction for Federal income tax purposes, the estimated cost of reclamation work required by Ohio law but not accomplished as of the end of the pertinent fiscal years ended June 30, 1973, June 30, 1974, and June 30, 1975. Respondent disallowed the deduction for the tax year ended June 30, 1975.

The question presented to us is whether petitioner, an accrual basis taxpayer, may accrue and deduct as a section 162[2] business expense the reasonable estimate of the cost of fulfilling the reclamation obligation in the year in which the duty to reclaim arose.[3] The parties agree that application of the "all of the events" test contained in section 1.461-1(a)(2), Income Tax Regs., determines the result in this case.[4] The dispute concerns the interpretation of that test.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in question.

[3]The parties agree that the reclamation costs are properly deductible as a business expense. The controversy concerns only the year in which petitioner may take the deduction.

[4]Respondent does not argue that petitioner's accounting method does not clearly reflect income. See sec. 446(b).

Section 461(a) states the general rule that a taxpayer is allowed a deduction in "the taxable year which is the proper taxable year under the method of accounting used in computing taxable income," and the regulations elaborate on this general provision. For accrual basis taxpayers, such as petitioner, section 1.461–1(a)(2), Income Tax Regs., provides in part as follows:

> Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy.

The "all of the events" test appearing in the quoted portion of the regulations was first enunciated in *United States v. Anderson*, 269 U.S. 422 (1926), wherein the Supreme Court stated (pp. 440–441):

> Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. * * *

It is apparent from the *Anderson* holding and from the principles set forth in the regulations, that petitioner must satisfy two requirements before it properly may deduct the accrued reclamation expenses during the tax year ended June 30, 1975:

(1) All of the events which determine petitioner's reclamation liability must have occurred before the end of the tax year in issue. *World Airways, Inc. v. Commissioner*, 62 T.C. 786, 797 (1974); *Thriftimart, Inc. v. Commissioner*, 59 T.C. 598, 611–613 (1973); *Oberman Manufacturing Co. v. Commissioner*, 47 T.C. 471, 477 (1937). This requirement prevents the deduction of an expenditure that might never be made. *World Airways, Inc. v.*

*Commissioner, supra* at 802; *Mooney Aircraft, Inc. v. United States*, 420 F.2d 400, 406 (5th Cir. 1969).

(2) Petitioner must have been able to estimate with reasonable accuracy during the tax year ended June 30, 1975, the amount of the reclamation expenditure to be made in subsequent years. *World Airways, Inc. v. Commissioner, supra* at 797, 805; see also *Crescent Wharf & Warehouse Co. v. Commissioner*, 59 T.C. 751, 759–760 (1973), revd. on another point 518 F.2d 772 (9th Cir. 1975). This requirement provides an element of certainty, although it is not essential that the precise amount of the expenditure be definitely ascertained. *Peoples Bank & Trust Co. v. Commissioner*, 50 T.C. 750, 755 (1968); see also *Brown v. Helvering*, 291 U.S. 193 (1934); *Harrold v. Commissioner*, 192 F.2d 1002, 1006 (4th Cir. 1951). The failure to satisfy either requirement of the foregoing two-step test would be fatal to petitioner's claim. *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497, 634 (1980) (Issue (bbb)).

Since the parties have stipulated that the petitioner's estimate of the cost of reclamation work required by the Ohio reclamation law as of June 30, 1975, was determined with reasonable accuracy, part two of the regulation's two-step test is satisfied. This fact therefore distinguishes this case from such prior decisions of this Court as *Denise Coal Co. v. Commissioner*, 29 T.C. 528 (1957), revd. 271 F.2d 930 (3d Cir. 1959); *Vincent v. Commissioner*, 19 T.C. 501 (1952), affd. sub nom. *Commissioner v. Gregory Run Coal Co.*, 212 F.2d 52 (4th Cir. 1954); *Patsch v. Commissioner*, 19 T.C. 189 (1952), affd. 208 F.2d 532 (3d Cir. 1953), where, in each instance, we held that the amount of reclamation expenditures after strip mining were not susceptible of computation with reasonable accuracy as of the close of the year. For example, in *Patsch* we found that the facts there "cast grave doubt on the reasonableness of the estimates on which the reserves were based, and on the partnership's ability to estimate in the taxable years with resonable accuracy the cost of backfilling the mined areas." 19 T.C. at 199.

In *Denise Coal Co.* the evidence showed that the "cost of restoring each acre or tract varied greatly," and we found that "there has been no showing to our satisfaction that the amounts estimated were reasonably accurate." 29 T.C. at 549. As stated, this is not our case.

We think it is essential to focus on the fact that the tax accounting problem confronting us results from two separate and distinct events: the *strip mining*, itself, which created this liability, and the *reclamation*, which created the cost. It is this factual distinctiveness which makes the problem unusual. In *Southern Pacific Transportation Co. v. Commissioner, supra*, for example, we were dealing with a unified "event"; i.e., the proper year for deducting accrued vacation pay; here, the factual setting is bifurcated.

It may readily be seen, however, that having stipulated that reclamation costs were reasonably estimated, respondent has substantially circumscribed his area of maneuverability. By making this stipulation, respondent is precluded from arguing that events occurring in the succeeding year or years might substantially alter the cost of the reclamation. Apparently, fully accepting this constriction, he focuses his argument instead on petitioner's "liability to pay." Respondent's position is stated in the following manner in his brief: "It is respondent's position that this taxpayer's statutory duty to reclaim did not create any *liability to pay* and that the deduction claimed is therefore not allowable. Rather, the expense of reclamation will be deductible only when, as and if the reclamation is performed." (Emphasis in brief.)

Respondent's liability-to-pay approach is, in actuality, an argument that the reclamation expenses are deductible only when, as, and if the reclamation is performed, as above quoted from his brief. Such an argument, however, flies in the face of the reality of the Ohio law which requires the strip miner to estimate his reclamation cost and post a surety bond to cover it. Accordingly, once these two acts have been performed, followed by a third, the intended strip mining, the liability becomes certain. Either the strip miner performs the reclamation or he forfeits the bond. There is nothing whatever in this record to support respondent's argument that petitioner might do neither.

We think that this case presents a question similar to the

issue addressed in *Lukens Steel Co. v. Commissioner*, 52 T.C. 764 (1969), affd. 442 F.2d 1131 (3d Cir. 1971).[5] In that case, the taxpayer agreed to make certain payments to a trust fund under a supplemental unemployment-benefit plan in accordance with a collective bargaining agreement. The taxpayer's total liability to the trust for a year was fixed as to existence and amount by reference to events which occurred during that year, with the ultimate payment of part of this amount to the trust being uncertain as to time but reasonably certain in fact. Although there was uncertainty during the tax years with regard to the ultimate recipients of the benefits and the time of the payments from the taxpayer to the trust and from the trust to the ultimate recipients, we held that the taxpayer was entitled to accrue and to deduct the amount representing its liability to pay in the future to the trust.

In the *Lukens Steel* case, as in this case, the taxpayer became obligated in the tax year to pay an amount of money in the future. In that case, as in this case, the ultimate recipient of the payment and the timing of the payment were unknown. Respondent, in both cases, would deny the accrual and deduction until the year in which the taxpayer is obligated to pay cash immediately to an identified person. Rev. Rul. 76–345, 1976–2 C.B. 134; Rev. Rul. 72–34, 1972–1 C.B. 132. In *Lukens Steel* we held that the all-events test was satisfied by—

a liability fixed as to existence and amount by reference to facts existing during the taxable years with its ultimate payment reasonably certain in fact but indeterminate during the years of accrual with regard to the ultimate recipients' exact shares of the accrued amounts and with regard to the times of actual payouts * * * [52 T.C. at 785–786.]

The same rule properly applies in this case. During the tax year, petitioner's obligation to reclaim, and thus its liability to pay reclamation expenditures, was fixed by the fact of strip mining and, by concession of the parties, fixed as to amount. The fact that the recipients of petitioner's reclamation payments and the relative portions that they would receive were not identified in the tax year is irrelevant. Petitioner need not wait until the reclamation work is done before it can accrue

---

[5]We reaffirmed the *Lukens Steel* decision in *Reynolds Metals Co. v. Commissioner*, 68 T.C. 943 (1977). See also *Washington Post Co. v. United States*, 186 Ct. Cl. 528, 405 F.2d 1279 (1969).

and deduct the anticipated reclamation expenses where, as here, the events fixing the fact of liability to pay these expenses occurred during the tax year.

A decision for petitioner in this case requires us to confront and deal with an earlier decision of this Court which reached an opposite result: *Harrold v. Commissioner,* 16 T.C. 134 (1951), revd. 192 F.2d 1002 (4th Cir. 1951). The *Harrold* case dealt with the deductibility of a partnership's reclamation costs under the West Virginia strip-mining law. At the end of 1945, the year in question, the partnership estimated and accrued on its books as a liability the sum of $31,090 as the cost of backfilling the strip-mined area, which we found to be "in accord with sound accounting practices." The taxpayers argued that they were under contractual and statutory liability, during the taxable year when mining, to backfill or replace the surface of the property mined, and had executed bond to the State to guarantee performance. Therefore, in order correctly to reflect true income, they could and should deduct in the taxable year the aforementioned estimated cost. Finding for the Commissioner, we held that a general obligation, such as to renovate, or restore, property, is not such a liability as to be the basis for deducting a reserve based upon an estimate of the future cost of such work. 16 T.C. at 139. See also *Spencer, White & Prentis, Inc. v. Commissioner,* 144 F.2d 45 (2d Cir. 1944), affg. a Memorandum Opinion of this Court.

The Fourth Circuit Court of Appeals reversed our holding in *Harrold,* holding that "when all the facts have occurred which determine that the taxpayer has incurred a liability in the tax year, and neither the fact nor the amount of the liability is contested, and the amount, although not definitely ascertained, is susceptible of estimate with reasonable accuracy in the tax year, deduction thereof from income may be taken by a taxpayer on an accrual basis." *Harrold v. Commissioner,* 192 F.2d 1002, 1006 (4th Cir. 1951), revg. 16 T.C. 134 (1951).

In its opinion, the Circuit Court in *Harrold* also stated that "we think that the ability to make an approximate estimate should be the determining factor in each case, rather than the literal application of the formula that an asset or a liability may not be accrued in any taxable year *prior to its liquidation.*" (Emphasis added.) We agree with the Circuit Court's opinion that the liability may be accrued prior to its liquida-

tion *provided,* as here, the reasonable accuracy test of the regulation is fully met. Where the test is met, we reject respondent's "liability to pay" limitation on the regulation.

One of the issues in *Denise Coal Co. v. Commissioner, supra,* involved the taxpayer's accrued reclamation expenses under the Pennsylvania Bituminous Coal Open Pit Mining Conservation Act of 1945. We there held for the Commissioner, partly following our *Harrold* decision, but also because the taxpayer failed to show that the estimated costs were reasonably accurate. This latter fact, in our opinion, distinguishes *Denise Coal* from the case before us. Our decision on the reclamation cost issue was reversed, however, by the Third Circuit Court of Appeals, partly on the basis of that Court's conclusion that the expenses were reasonably estimated, but also on the basis that "The taxpayer on an accrual system of accounting will not have his books 'clearly reflect' the state of his income if he does not make such a reserve."[6] The Court further stated that *Denise Coal* is like *Harrold v. Commissioner, supra,* and unlike *Patsch v. Commissioner, supra. Denise Coal Co. v. Commissioner,* 271 F.2d 930 (3d Cir. 1959), revg. 29 T.C. 528 (1957).

In a case involving the deductibility of the accrued costs of completing a manufacturing contract, the Sixth Circuit Court of Appeals (the court to which an appeal in this case would lie), relied upon the Fourth Circuit's decision in *Harrold v. Commissioner, supra,* in holding that "The fact that the accrued liability was based upon an estimate of costs does not * * * defeat deductibility." *Hilinski v. Commissioner,* 237 F.2d 703 (6th Cir. 1956), revg. a Memorandum Opinion of this Court.

In summary, we hold that petitioner has satisfied both facets of the all-events test of section 1.461–1(a)(2) of the Income Tax Regs. Accordingly, we hold for petitioner. To the extent that *Harrold v. Commissioner, supra,* is inconsistent with this opinion, it will no longer be followed. We will continue to adhere to our decision in *Denise Coal,* however, in those cases where we find that accrued costs are not susceptible of reasonable estimation. Furthermore, we deem it necessary to stress that the potential for abuse makes it essential that the

---

[6]As indicated in note 4, the question of whether petitioner's books clearly reflect income, as required by sec. 446(b), is not an issue in this case.

all-events test of the regulations continues to be strictly construed in future cases of this nature before this Court, and that such cases are not viewed as occasions to judicially "reenact" the section 462 that the Congress repealed in 1955.

*Decision will be entered under Rule 155.*

Reviewed by the Court.