**SOUTH SIDE LANDFILL, INC.,** Landfill Management Co., Randolph Farms, Inc., Ralph and Mina Balkema, and John and Dorothy Balkema, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. 1:95–CV–220.

United States District Court, W.D. Michigan, Southern Division.

April 16, 1999.

Jasper A. Cragwall, Jr., Warner, Norcross & Judd, LLP, Grand Rapids, MI, for South Side Landfill, Inc., Landfill Management Co., Randolph Farms, Inc., Ralph Balkema, Mina Balkema, John Balkema, Dorothy Balkema, pltfs.

Michael L. Shiparski, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, Stephen T. Lyons, U.S. Department of Justice, Washington, DC, for United States of America, defts.

### OPINION

QUIST, District Judge.

Section 468 of the Internal Revenue Code ("IRC") permits a landfill owner to deduct on a pro-rata basis amounts required to fund future closing and post-closing obligations which the landfill owner may not incur for many years. In order to determine the amount of the deduction, a reserve must be established and the balance computed as set forth in § 468. This case presents the narrow issue of whether IRC § 468(a)(2)(B), 26 U.S.C.

§ 468(a)(2)(B), which requires landfill owners to include "deemed interest" in determining the amount of their reserves, applies to a landfill owner who takes the deduction and actually sets aside funds which are earmarked for future closing obligations. Plaintiffs, South Side Landfill, Inc. ("SSL"), Landfill Management Co. ("LMC"), Randolph Farms, Inc. ("RFI"), Ralph and Mina Balkema, and John and Dorothy Balkema, filed this action against the United States ("Government" or "I.R.S.") pursuant to 26 U.S.C. § 7422 seeking a refund of taxes for the years 1989 to 1992. Plaintiffs' claim for a refund depends, in part, upon whether SSL, LMC, and RFI are required to include in their closing cost reserves the "deemed interest" component set forth in § 468(a)(2)(B).[1] Now before the Court is the Government's Motion for Partial Summary Judgment.

### Facts

Plaintiffs SSL and RFI own and operate landfills in Indiana, and Plaintiff LMC owns and operates a landfill in Michigan. The landfills are operated under licenses issued by the states in which the landfills are located. Plaintiffs Ralph Balkema and John Balkema each owns fifty percent of the stock of SSL, LMC, and RFI.[2] SSL, LMC, and RFI are Subchapter S corporations and, therefore, income and deductions are allocated directly to the shareholders.

As operators of landfills, SSL, LMC, and RFI are subject to state and federal regulations which impose closure and post-closure obligations on landfill operators. For example, following closure, landfill operators are required to construct a final cap on the landfill, maintain the cap, and monitor and remove leachate from the landfill. The maintenance and monitoring obligations continue for thirty years after closure. Compliance with these require-

ments entails significant expense, and because these costs are incurred after the landfill has ceased operations a landfill operator will not be able to pay the costs from operating income generated from a closed site. Because of this timing gap between income and expense as to a particular site, Congress has granted landfill operators a special deduction for future closing costs in Internal Revenue Code § 468. The § 468 deduction allows landfill operators who use the accrual method of accounting to deduct a pro-rata portion of future closing and post-closing costs prior to the economic performance of those obligations, calculated on a current basis, and provides for the creation of a reserve for tracking the amount of qualified closing costs.

SSL, LMC, and RFI, being accrual method taxpayers, elected to accrue their closing and post-closing costs under § 468 and filed their returns with the I.R.S. The I.R.S. audited the returns and made several adjustments, which caused a tax deficiency for the shareholders. The shareholders paid the deficiency and filed this action for a refund.

### Issue Presented

Section 468(a)(2)(B) provides:

A reserve shall be increased each taxable year by an amount equal to the amount of interest which would have been earned during such taxable year on the opening balance of such reserve for such taxable year if such interest were computed -

(i) at the federal short-term rate or rates (determined under section 1274) in effect and

(ii) by compounding semiannually.

26 U.S.C. § 468(a)(2)(B).

The sole issue raised in the instant motion is whether, in computing their re-

---

1. At oral argument, the parties informed the Court that most of the other issues in this case have been resolved and that the issue presented in this motion is the only unresolved issue in the case.

2. Mina Balkema and Dorothy Balkema, the wives of Ralph Balkema and John Balkema, are named as plaintiffs because they filed joint income tax returns with their husbands.

serves under § 468, SSL, LMC, and RFI are excused from the requirement of adding "deemed interest" to their reserves pursuant to § 468(a)(2)(B) because they, perhaps unlike large ongoing operators of landfills, actually fund their closing obligations and pay tax on the income earned on those funds.

### Discussion

Prior to 1984, accrual method taxpayers were permitted by the Internal Revenue Code to deduct expenses to be incurred in connection with the performance of future obligations only if the expense satisfied the "all events" test. Under the "all events" test, an expense could be deducted prior to the year in which the expense was actually incurred only where: (1) all the events necessary to determine the fact of liability had occurred; and (2) the amount of the liability could be determined with reasonable accuracy. *See Ohio River Collieries Co. v. Commissioner*, 77 T.C. 1369, 1372, 1981 WL 11319 (1981).

In 1984, Congress amended the Internal Revenue Code to include § 461(h)(1), which provides that the "all events" test cannot be "met any earlier than when economic performance with respect to such item [to be deducted] occurs." 26 U.S.C. § 461(h)(1). Thus, under § 461(h)(1), economic performance must occur before an item may be deducted. At the same time, Congress enacted § 468, which provides an exception to the economic performance rule stated in § 461(h)(1) by allowing landfill operators to deduct qualified closing costs prior to the year in which such costs are incurred.[3] Under § 468, a landfill operator may elect to deduct in any taxable year to which a § 468 election applies, "current ... closing costs allocable to ... the production from the reserve property during such taxable year." 26 U.S.C. § 468(a)(1)(B).[4] "Current closing costs"

are defined as "the amount which the taxpayer would be required to pay for qualified closing costs if the closing activities were performed currently." 26 U.S.C. § 468(d)(1)(B)(i). Thus, a landfill operator who elects to deduct future closing expenses pursuant to § 468 is permitted to deduct the current amount of closing costs attributable to that portion of the landfill consumed during the taxable year.

The amount of each annual deduction under § 468 with respect to a particular site must be added to a separate reserve maintained for that site. *See* 26 U.S.C. § 468(c)(2)(B). The amount of the reserve is determined pursuant to § 468(a)(2). The opening balance of the reserve in the first year is zero. *See* 26 U.S.C. § 468(a)(2)(A). The reserve is increased by the amount of any annual deduction allowed under § 468(a)(1). *See* 26 U.S.C. § 468(a)(2)(D). The reserve is also increased by adding interest ("imputed interest") as follows:

A reserve shall be increased each taxable year by an amount equal to the amount of interest which would have been earned during such taxable year on the opening balance of such reserve for such taxable year if such interest were computed -

(i) at the federal short-term rate or rates (determined under section 1274) in effect and

(ii) by compounding semiannually.

26 U.S.C. § 468(a)(2)(B). The reserve is decreased by "[a]ny amount paid by the taxpayer during any taxable year for qualified ... closing costs allocable to portions of the reserve property ...." 26 U.S.C. § 468(a)(2)(C).

In essence, the reserve is nothing more than a bookkeeping entry, as the statute does not require the taxpayer to actually

---

**3.** Section 468 also allows surface mine owners to deduct qualified "reclamation costs." *See* 26 U.S.C. § 468(d)(2).

**4.** The "reserve property" refers to "any property with respect to which a reserve is estab-

lished under subsection (a)(1)." 26 U.S.C. § 468(d)(4). In this case, the landfills operated by SSL, LMC, and RFI are the "reserve property."

set aside funds that are specifically earmarked for payment of closing obligations to be entitled to the deduction. *See* H.R.Rep. No. 98–861, at 880 (1984), *reprinted in* 1984–3 C.B. Vol. 2 at 134 ("All amounts deducted for site closing costs are deemed deposited in a tax-exempt sinking fund, on a site by site basis, which earns interest" at the federal short-term rate); Staff of Joint Comm. on Taxation, 98th Cong., *Gen. Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* 274 (Comm. Print 1984)(stating that "all amounts deducted for site closing costs are deemed deposited in a tax-exempt site closing sinking fund in the year deducted"). The purpose of the reserve is to provide a basis for determining the amount the taxpayer is entitled to deduct each year.[5] Although imputed interest is a component which affects the amount of the reserve, the taxpayer is not required to report the interest as income. However, because imputed interest serves to increase the amount of the reserve, it may reduce the amount of the deduction in future years or, if the amount of the reserve at the end of a given taxable year exceeds the current cost to close the landfill (by virtue of imputed interest being added to the reserve), may cause the taxpayer to include in gross income the amount by which the reserve exceeds the current cost to close the landfill. *See* 26 U.S.C. § 468(a)(4)(B), (C).

Plaintiffs contend that SSL, LMC, and RFI are not required to include imputed interest in computing their reserves as required by § 468(a)(2)(B) because they actually funded their closing and post-closing obligations with specific assets and included the interest income on those assets in gross income. In other words, Plaintiffs contend that the statute should be interpreted as excusing a landfill owner from adding imputed interest to his reserve where the owner has actually funded his obligations and those funds earn interest at a rate which equals or exceeds the statutory rate under § 468(a)(2)(B). Under Plaintiffs' interpretation, § 468(a)(2)(B) applies only to landfill operators who elect the § 468 deduction but fail to act responsibly by funding their future obligations with specific assets. If Plaintiffs' interpretation is correct, SSL, LMC, and RFI will have the ability claim greater § 468 annual deductions and the possibility that they will be required to include excess reserve amounts in gross income will be eliminated (or diminished) because the elimination of imputed interest will decrease their reserve amounts.[6]

Plaintiffs' argument is based upon two underlying themes: social responsibility and fairness. First, Plaintiffs contend that Congress intended § 468(a)(2)(B) to apply only to landfill operators who act irresponsibly by not actually funding their future closing and post-closing obligations with specific assets at the time they take the § 468 deduction. In support of their position, Plaintiffs rely on the phrase "the amount of interest *which would have been earned*" in § 468(a)(2)(B) as evidence that Congress intended to impute interest only in situations where the taxpayer does not actually "fund" its obligations with specific, dedicated assets that earn interest. Under Plaintiffs' interpretation, if a socially responsible landfill owner dedicates funds

---

**5.** The reserve does not limit the amount that may be deducted for current closing costs, because the taxpayer is entitled to deduct that portion of qualified closing costs incurred during the taxable year which exceeds the amount in the reserve at the end of the taxable year. *See* 26 U.S.C. § 468(a)(3).

**6.** Plaintiffs characterize the effect of having to include imputed interest in their reserves and paying tax on interest earned on the dedicated funds as a "double tax." The Court disagrees with Plaintiffs' analysis because the same income is not being taxed twice. Under the circumstances presented in this case, the income earned on the closing cost funds is taxed once. Although interest is imputed on the reserve balance, the taxpayer is not taxed on that interest, although the imputed interest may cause the taxpayer to report income which could have been deducted under § 468 had the imputed interest not been included in the reserve.

to cover his obligations and those funds actually earn interest, there is no need to impute interest. Plaintiffs' fairness argument is based upon the disparity between giant corporations, which own many landfills and can fund their closing obligations at one site with revenues from other sites, and operators of single landfill sites, who do not have multiple sites and must set aside specific funds to meet their closing obligations. Plaintiffs assert that it is unfair to treat giant corporations, which do not need to actually fund their future obligations and thus receive a windfall under § 468, the same as owners of single landfills, who are required fund their obligations while the landfill is operating, by imputing interest to both types of taxpayers.

■■■ In construing the statute at issue, the Court must look first to the language used by Congress. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). "A firmly established principle of statutory interpretation is that 'the words of statutes-including revenue acts-should be interpreted where possible in their ordinary, everyday senses.'" *Hanover Bank v. Commissioner*, 369 U.S. 672, 687, 82 S.Ct. 1080, 1089, 8 L.Ed.2d 187 (1962)(quoting *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1051, 91 L.Ed. 1301 (1947)). Ordinarily, the language used is presumed to reflect the legislative purpose of the statute. *American Tobacco Co.*, 456 U.S. at 68, 102 S.Ct. at 1537. "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Where the intent of Congress as expressed in unambiguous language of a statute is clear, a court need only apply the language of the statute without examining legislative history. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In addition, tax provisions granting deductions are "matter[s] of

legislative grace" and must be strictly construed. *White v. United States*, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938); *Helvering v. Northwest Steel Rolling Mills*, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29 (1940).

■■ Applying the principles cited above, the Court finds that § 468(a)(2)(B) requires all taxpayers to include imputed interest in their reserves, regardless of whether they actually "fund" their future closure obligations by allocating specific assets to a separate investment account as SSL, LMC, and RFI have done. The language of the statute itself makes no distinction between taxpayers who "fund" and those who do not "fund" their future closing obligations with specific assets. Rather, interest must be imputed in all circumstances. By using the phrase "[a] reserve" rather than one such as "[a] reserve which is not currently funded" in § 468(a)(2)(B), the statute requires all taxpayers to adjust their reserves for imputed interest without regard to the issue of funding.

As noted above, § 468(a)(2)(B) imputes interest for purposes of calculating the amount of the reserve, i.e., the benchmark for determining the amount of the annual § 468 deduction. Thus, imputed interest serves a purpose within the statutory framework of § 468 apart from any actual "funding" by the taxpayer. Consequently, by accepting Plaintiffs' argument that they do not have to include imputed interest in their reserves, the Court would essentially be granting a judicially-created exception that would contravene the express language of the statute. Moreover, although Plaintiffs claim that requiring SSL, LMC, and RFI to include imputed interest in their reserves and pay taxes on the interest earned on the funds they have dedicated to their closing obligations produces a harsh result, the result is harsh only because of how SSL, LMC, and RFI have chosen to apply the funds from their § 468 deduction. Consider, for example, a landfill owner who instead of placing his § 468

funds in a separate interest bearing account, purchases a building for use in his operations. When the landfill closes several years later, the landfill owner may sell the building at a significant gain and apply the proceeds to satisfy his closing obligations. Faced with paying tax on the gain, should the landfill owner not be permitted to use Plaintiffs' reasoning and argue that some or all of the gain was absorbed by the imputed interest component included in the reserve over many years?

Although Plaintiffs contend that their interpretation is consistent with the legislative history of § 468, Plaintiffs have not cited anything in the legislative history which leads the Court to the conclusion that Congress actually intended to limit imputed interest to "non-funded" reserves. Plaintiffs may be correct that a taxpayer who actually funds his closing obligations with specific assets at the time he takes the § 468 deduction is more responsible than a taxpayer who does not fund his obligations with specific assets. However, neither the statute nor the legislative history demonstrates, and the Court seriously doubts, that Congress gave one moment of thought about differences between those landfill owners who fund their closing costs with specific assets and those who do not. Moreover, there is no indication that Congress considered use of the specific funds from the deduction to fund future closing obligations to be more socially responsible than, for example, using such funds to purchase general corporate assets which may also be used to satisfy future closing obligations. Likewise, there is no indication that Congress intended or considered a distinction between large corporations which own many sites and small owners who own only one or two sites, and Plaintiffs have not presented any evidence to support their claim that large corporations fund their future closing operations any differently than small landfill owners.

Plaintiffs also contend that imputed interest is not necessary to adjust for the time-value of money because § 468 deductions must be based upon the current costs to close the landfill and, therefore, imputed interest is unrelated to the present value of the deduction. This argument ignores the fact that by allowing a deduction many years in advance of the time the actual obligation is incurred, a taxpayer who claims the benefits of § 468 is obtaining the free use of money for several years. Imputed interest represents Congress's decision that taxpayers who benefit from the § 468 deduction should not be granted interest-free use of funds. The result suggested by Plaintiffs would be contrary to the policy Congress adopted in § 461(h) of permitting deductions only when economic performance has occurred.

In sum, the Court finds that, SSL, LMC, and RFI must increase their reserve balance by the amount calculated pursuant to that section. Plaintiffs' arguments should be addressed to Congress.

### *Conclusion*

For the foregoing reasons, the Court will grant the Government's Motion for Partial Summary Judgment.

An Order consistent with this Opinion will be entered.

### *ORDER*

In accordance with the Opinion filed this date,

**IT IS HEREBY ORDERED** that the United States' Motion For Partial Summary Judgment (docket no. 25) is **GRANTED.**