**KAISER STEEL CORPORATION,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 82–4689.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1983.
Decided Oct. 6, 1983.

William A. Whitledge, Atty., Washington, D.C., for defendant-appellant.

Paul H. Dawes, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiff-appellee.

Before TUTTLE,* MERRILL and PREGERSON, Circuit Judges.

MERRILL, Circuit Judge.

In this action by Kaiser Steel Corporation for refund of federal income taxes allegedly overpaid in 1964, the United States appeals from the judgment rendered in favor of Kaiser Steel.

## I.

Kaiser Steel is and was during 1964 engaged in the business of the manufacture and fabrication of steel and related products in California. Pursuant to California Worker's Compensation Laws, Kaiser Steel was required to provide benefits to its employees with respect to all injuries arising out of and in the course of employment. This obligation was imposed without regard to negligence and with limited statutory exceptions not applicable here. Thus the fact of injury normally established the fact of liability. Three kinds of benefits were provided: medical treatment cost payments; disability payments; and death awards. In 1964, Kaiser Steel became a self-insurer of all of its worker's compensation liability.

At all relevant times, Kaiser Steel has used the accrual method of accounting in computing its income. In 1964, it established on its books a reserve to meet its worker's compensation liability. In its income tax return for 1964, it deducted a figure totaling the amount paid by it during the year in satisfaction of that liability plus the sum of $425,418 as accrued liability for sums which it predicted would become payable in the future on uncontested claims for injuries suffered in 1964. The Commissioner disallowed that deduction to the extent of the sums reserved for future payments. Kaiser Steel paid the additional tax under protest and brought this action for refund. The District Court granted judgment for Kaiser Steel in the sum of $146,151 plus interest and the United States appeals.

## II.

Section 446(a) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 446(a), provides as a general rule that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." IRC § 461, 26 U.S.C.

* Honorable Elbert Parr Tuttle, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

§ 461, requires that "[t]he amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." For purposes of determining that "proper taxable year", Reg. § 1.461–1(a)(2), 26 C.F.R., Part 1, § 1.461–1(a)(2) (1983), sets forth what has become known as the "all-events" test [1] and reads in pertinent part:

> Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. However, any expenditure which results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year may not be deductible, or may be deductible only in part, for the taxable year in which incurred. While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. * * * Where a deduction is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, if any, between such amounts shall be taken into account for the later taxable year in which such determination is made. [2]

Thus, under the "all-events" test, two requirements must be satisfied in order for a deduction to be appropriate in any given year: (1) all of the events that bear on the fact of liability must have occurred, and (2) the amount of liability must be determinable with reasonable accuracy.

### III.

*The First Prong: Fact of Liability*

■ The government contends that Kaiser Steel's reserve does not meet the first prong of the all-events test because the existence of post-1964 liability remains contingent until the events giving rise to the obligation to make further payment have actually occurred.[3] The essence of the government's argument is that "all events" have not occurred to fix the fact of a taxpayer's liability until the amount of the liability is known with complete accuracy. Such a contention, were it accepted, would have the effect of fusing the two-pronged inquiry into one.

As the government concedes, this Court has explicitly rejected that contention in *Crescent Wharf & Warehouse Co. v. Commissioner,* 518 F.2d 772 (9th Cir.1975). There we held that a taxpayer can accrue for income tax purposes future worker's compensation payments on injuries suffered during the tax year and made pursuant to the obligation imposed by California statute. We reasoned that under California law once a worker's injury has occurred in course of employment and liability is not contested by the employer, all events have occurred determining the *fact* of liability and the first prong of the all-events test has been met. We noted that under the regulation the fact that future events may affect the monetary *amount* of liability does not preclude accrual if the amount can be determined with reasonable accuracy. *Id.* at 774.

---

**1.** The "all-events" test was originally articulated by the Supreme Court in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). *See Nightingale v. United States,* 684 F.2d 611, 614–15 (9th Cir.1982).

**2.** The quoted portion of Reg. § 1.461–1(a)(2) is identical to that in force in 1964. 26 C.F.R. Part 1, § 1.461–1(a)(2) (1961) & 1965 Supplement.

**3.** Among the contingencies the government enumerates are the possibilities that injured workers may not utilize medical services, may recover from their disability, or may not otherwise be entitled to periodic payments at the prescribed time for making them.

The government contends that *Crescent Wharf* was wrongly decided, and it suggests that the fact-of-liability issue be reconsidered *en banc* in the instant case to resolve what it perceives to be intercircuit conflict and contrary holdings of the Supreme Court. That contrary precedent, the government argues, establishes that the all-events test embodies a requirement that there not be any events which might occur after the close of the taxable year that would relieve the taxpayer from the obligation to pay. We disagree and decline to recommend reconsideration *en banc.*

We note at the outset that the Tax Court now appears to have aligned itself with the principles on which *Crescent Wharf* was based. The rationale we adopted in that case had earlier been the basis for the holding in *Harrold v. Commissioner,* 192 F.2d 1002 (4th Cir.1951). *Harrold* involved a taxpayer's statutory liability to restore and refill land which had been strip mined during the tax year. The question was whether the liability was deductible in the year during which the land had been mined or in the year during which it was restored. The Tax Court held that the deduction would have to await restoration. The Fourth Circuit reversed, holding that once the land was strip mined, all the facts had occurred which determined the fact of statutory liability and where the amount, although not definitely ascertained, was susceptible of estimate with reasonable accuracy, it could be accrued. The Tax Court, in *Ohio River Collieries Co. v. Commissioner,* 77 T.C. 1369 (1981), now has acquiesced in the Fourth Circuit's holding. There the Tax Court abandoned its opinion in *Harrold* and held that under the all-events test the future cost of restoration of land that had been strip mined can be accrued and deducted if the amount can be determined with reasonable accuracy. *Id.* at 1377.[4]

The cases relied upon by the government are cases in which the first prong of the all-events test was not met for the reason that the very *fact* of liability was contingent on the occurrence of future events. Thus, in *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), where the Court disallowed a deduction for the "write-down" of excess inventory despite the conformity of the practice to financial accounting principles, the problem involved future anticipated losses. In *Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), the general agent of fire insurance companies could not deduct its possible and contingent liability for refunds based upon anticipated future cancellation of policies. *Lucas v. American Code Co.,* 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538 (1930), held that an employer could not deduct the amount of anticipated liability arising from a contested breach of contract suit.[5] And *American Automobile Ass'n v. United States,* 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961), relied upon heavily by the government, involved the deferral of dues collected by an automobile club in return for road services; the Court held that AAA could not defer the income notwithstanding expected future service expenses because of the speculative nature of the expenses; the providing of road service was contingent upon the demand of dues payers. Not only was demand lacking, however; the events giving rise to a member's need for service, on which a demand would be based, had yet to occur. *See also RCA Corp. v. United States,* 664 F.2d 881 (2d Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982). In each case the sought deduction was based not upon an estimate of the amount of liability but rather upon a prediction that liability ultimately might be established. *Cf. Supermarkets General Corp. v. United States,* 537 F.Supp.

---

**4.** In *Ohio River,* the parties had stipulated that the amount of reclamation costs could be determined with reasonable accuracy.

**5.** In disallowing the deduction, the Court in *Lucas* was persuaded that the fact of liability was "strenuously contested," the amount of

the liability was "wholly unpredictable," and the established reserve bore "no relation to the apprehended total loss." 280 U.S. at 451, 50 S.Ct. at 203. We cannot say that any of those observations apply to the facts in the instant case.

**1308**

759 (D.N.J.1982) (recognizing distinction between *Crescent Wharf* and contested liability cases).

The government also asserts that while generally accepted accounting principles may approve of the use of reserves to meet anticipated future costs and obligations, income tax accounting, with its mandate to preserve the revenue, is focused on the annual reporting of income and can give no quarter to uncertainty. It contends that for that reason the system of income tax accounting does not permit the use of reserves unless such reserves are explicitly authorized by statute and that such statutory authority is lacking here. We reject this contention. Indeed, once the two requirements of Reg. § 1.461–1(a)(2) were satisfied, Plaintiff had no alternative but to claim the deduction in the manner in which it did, that is, consistent with its method of financial accounting. *See* Reg. § 1.461–1(a)(3)(i), 26 C.F.R., Part 1, § 1.461–1(a)(3)(i).

We adhere to *Crescent Wharf.*[6]

## IV.

*The Second Prong: Reasonable Accuracy*

■ The government contends that to meet the all-events test, the *amount* of liability must be fixed, definite and determinable by objective facts existing at the end of the year for which deduction is sought. The regulation imposes no such requirement and we so stated in *Crescent Wharf.* 518 F.2d at 774. The government also argues that the test does not permit the deduction of estimates, no matter how accurate they may subsequently prove to be. The regulation, as we have quoted it, clearly speaks to the contrary. The standard is

"reasonable accuracy" rather than "fixed, definite and determinable by objective facts".

The question as we perceive it is whether the amount of liability becoming payable in future years could, at the close of the taxable year, be determined with reasonable accuracy through application of Kaiser Steel's medical and accounting practices.

In its Findings of Fact, the District Court dealt in detail with the practices followed by Kaiser Steel, starting at the time of injury and initial treatment. These included medical reports, the manner in which the worker's compensation unit of the company's insurance department evaluated the injury, the nature of the "computation of reserve" form Kaiser Steel used, and the manner in which Kaiser Steel determined the medical reserve figures for entry on that form.

The Court credited the testimony of Kaiser Steel's expert witness, Edward D. Struck, who had had extensive government and commercial training and experience in the worker's compensation field. He testified as to the tests of reasonable accuracy employed by the California Department of Industrial Relations and by commercial self-insurance administrators. Up to and including 1964, tests for individual case accuracy were made on the basis of facts available to the claims analyst at the time calculations were made rather than from the perspective of hindsight. Commencing after 1964, statistical measures were developed to test the accuracy of the reserve calculations on the basis of performance. Struck testified that Kaiser Steel's reserve calculations were better than those of the industry as a whole. With respect to performance, the Court found:

6. The government also urges that this Court's decision in *Crescent Wharf* and its decision following *Crescent Wharf* in *Wien Consolidated Airlines, Inc. v. Commissioner,* 528 F.2d 735 (9th Cir.1976), are inconsistent with our decision in *World Airways Inc. v. Commissioner,* 564 F.2d 886 (9th Cir.1977), aff'g. 62 T.C. 786 (1974). The government asserts that in adopting the Tax Court's opinion in *World Airways,* this Court recognized the rule that accrual is permitted only when the obligation to pay is unconditionally fixed. In that case, however, involving the proper year for deduction of a reserve the taxpayer had established for airplane overhaul, the taxpayer was under no contractual obligation to make any payments unless the engines were actually overhauled. 62 T.C. at 802. Thus, no obligation to pay ever came into existence. *Id.* at 804. *See Nightingale v. United States,* 684 F.2d 611, 615 (9th Cir.1982). The cases are reconcilable.

[T]he "reasonable accuracy" of that accrual is demonstrated, in the aggregate, by the testimony of Mr. Struck and more particularly by the following comparisons: (a) there was a reserve balance at December 31, 1964 of $425,418, and there were total payments from January 1, 1965 through December 31, 1979 of $455,-737, and (b) there was a total incurred liability from and after January 1, 1964 of $664,915, and there were total payments from January 1, 1964 through December 31, 1979 of $681,273. Comparing the December 31, 1964 reserve to the amount paid and to be paid, KAISER STEEL will pay 117 percent of the liability (including excess coverage) reported on the 1964 income tax return. Similarly, comparing its reserve from the date of injury to what it has and will pay it has paid 111 percent of its liability (including excess coverage).

And further:

The changes in the aggregate reserve after 1964 over the ensuing 17-year period were 15.06 percent, based upon the year end 1964 reserve, in comparison to a 25 percent change of the industry.

In summary, the District Court found:

KAISER STEEL'S system for reserving for its worker's compensation liability was in accordance with applicable law, was commercially reasonable, was logical and scientific, and was well suited for its purpose of accurately reflecting the worker's compensation liability which KAISER STEEL incurred in the process of generating income in 1964.

Further the Court found that the government had presented no competent evidence to contradict any of its Findings. The Court's Findings cannot be said to be clearly erroneous. The Court concluded:

The evidence presented in the trial court through the testimony of Messrs. Geye, Strayer, Struck, and Moore establishes by a preponderance that the cost of medical care and indemnity, the probable duration of injury, and the probability, if any, of permanent disability can be and was in this case established with reasonable accuracy.

We agree.

The government protests that accuracy of the reserve *in the aggregate* is not a proper test for income tax purposes and that accuracy must be tested from the point of hindsight on a case-by-case basis. It asserts that there were many cases in 1964 in which no claim ever was made and no money ever paid out, although sums had been reserved. It points to many other individual cases where the 1964 reserve ultimately proved to be considerably off the mark.

The government thus would rely on a hindsight examination of each individual case and a numerical count of inaccurate predictions without regard to amount. It argues that a failure to determine the amount of liability with reasonable accuracy in a substantial number of claims demonstrates that such a determination cannot be made and that deduction for the whole reserve must, for that reason, be disallowed.

It is not numbers of claims, however, with which we are concerned. It is with income and with the amount of expense properly attributable to the earning of that income. *See Crescent Wharf,* 518 F.2d at 775.[7] The instances of inaccuracy noted by the government were all of minor injuries where the amounts reserved could be said to verge on *de minimis* and their sum had no effect upon the accuracy of the expense figure claimed. Here, availing ourselves of hindsight, we see that the amount of liability reserved proved to be accurate within 7% ($425,418 reserved as of December 31, 1964; $455,737 paid between January 1, 1965 and December 31, 1979); and that to produce

**7.** We note incidentally that the use of aggregate analysis for computing income tax liability is not unusual; the regulations are replete with examples in which taxpayers are instructed to rely on aggregation. *See, e.g.,* Reg. § 1.46-3(e)(1)(ii) (average estimate for assets for investment tax credit); Reg. § 1.167(a)-10 (depreciation periods).

that modest inaccuracy Kaiser Steel *under* reserved rather than over reserved.

We hold that viewing the reserve in the aggregate is a proper manner in which to test reserve accuracy.[8]

It may be that in a proper case some individual reserve should be disallowed because of special circumstances rendering it beyond reasonable estimate at year end. This question we do not reach. We hold that numerical accumulation of individual inaccuracies without regard to amount cannot render the entire reserve subject to disallowance under the second prong of the all-events test.

JUDGMENT AFFIRMED.

TUTTLE, Circuit Judge, specially concurring:

It is clear, as conceded by the United States, that this Court is bound by the earlier decision in *Crescent Wharf & Warehouse Co. v. Commissioner*, 518 F.2d 772 (9th Cir.1975), that the fact of injury to an employee under California Workman Compensation laws was sufficient to establish the *fact* of liability, the first prong of the all-events test. Were it not for this fact, I would find myself of the view expressed by the Tax Court in *World Airways, Inc. v. CIR*, 62 T.C. 786 (1974), subsequently affirmed by this Court at 564 F.2d 886 (9th Cir.1977), after we decided *Crescent Wharf*. *World Airways* seems to me to be inconsistent with this Court's earlier decision in *Crescent Wharf*.

Once the hurdle of fact of liability has been passed, I concur in the decision of the Court here that we cannot find clearly erroneous the trial court's determination that the amount to be expended in the future was "established with reasonable accuracy."

I, therefore, concur.

**8.** The government also argues that the Supreme Court in *American Automobile Ass'n v. United States*, 367 U.S. 687, 692–93, 81 S.Ct. 1727, 1729–30, 6 L.Ed.2d 1109 (1961), held that aggregate estimates are not permitted for tax accounting purposes. As we have already noted, however, that case turned primarily on the

contingent nature of the deferral sought. The passages quoted by the government make clear only that where the *fact* of liability is speculative, it cannot be made definite by resort to aggregate accounting. *See Supermarkets General Corp. v. United States*, 537 F.Supp. 759, 765 (D.N.J.1982).