**ESCO CORPORATION and Peerless Pattern Works, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 81–129–RE.**

United States District Court,
D. Oregon.

Nov. 17, 1983.

Clarence H. Greenwood, Black, Helterline, Beck & Rappleyea, Portland, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., Portland, Or., G. Scott Nebergall, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

REDDEN, Judge:

In this action, plaintiff ESCO Corporation (ESCO)[1] seeks a refund of federal income taxes for the years 1973, 1974 and 1975. Its claims were tried to the court on stipulated facts on July 8, 1983. In addition, experts for both sides testified. This opinion constitutes my findings of fact and conclusions of law in accordance with Fed. R.Civ.P. 52(a).

### I. *Background*

The parties' stipulation of facts is incorporated by reference herein. I, therefore, give only a brief recitation of the facts. ESCO is an Oregon corporation which operates a metal fabrication plant in Portland, Oregon. During the years in question, ESCO used the accrual method of accounting.

ESCO is subject to the Oregon Workers' Compensation Act. O.R.S. 656.001–.749 (1981). The Act requires every Oregon employer to secure the payment of workers' compensation through insurance, either through an insurance company or through self-insurance. Prior to July 1, 1970, ESCO was insured by an insurance company. Beginning July 1, 1970, ESCO converted to a self-insurance plan for the first $50,000 liability for each claim. It has excess coverage through a commercial insurance company for any claims above $50,000.

The Workers' Compensation Act requires ESCO to provide employees who are injured on the job three types of benefits: (1) necessary medical treatment; (2) disability payments; and (3) death benefits. The Act also mandates that ESCO establish and

1. Peerless Pattern Works is a named plaintiff because the two companies filed a consolidated federal income tax return for the taxable years at issue. Peerless Pattern Works did not participate in a self-insured workers' compensation program during the taxable years involved, and, therefore is not substantially involved in this case. All references to "plaintiff" in this Opinion refer only to ESCO.

maintain a claims reserve to reflect the estimated future cost of benefits payable to injured employees. ESCO hired an independent claims management firm, Employee Benefits Insurance Company (EBI), to establish and maintain this reserve.

When an employee is injured, ESCO and the employee prepare a report about the accident. ESCO forwards these reports to EBI. EBI determines whether the claim should be accepted for payment by ESCO or rejected. If EBI concludes a claim is compensable, it establishes a claims reserve account on EBI's books on behalf of ESCO for the estimated liability for medical costs and compensation. In accordance with Oregon law, EBI establishes a reserve for each injury. The reserves are only on its books. No funds are actually set aside in an escrow account or otherwise.

EBI bases ESCO's reserve accounts on estimates made by following its own reserving procedures and the guidelines of the Oregon Workers' Compensation Department. The reserve is an estimate of the overall cost of the benefits which may be paid to an employee as a result of a work-related injury. The reserve includes estimates of medical costs, the time the worker will be off work, the cost of any partial or permanent disability and any death benefits payable.

Compensation payments and medical payments can extend over a period of time. The majority of ESCO's liability to injured employees, however, was paid within three years of the date of the injury of the employees.

Plaintiff sought a deduction for workers' compensation expenses for 1973, 1974 and 1975 based upon (1) actual disbursements with respect to injuries occurring in that year; (2) an additional amount estimated by EBI to be paid in future years with respect to injuries occurring in the current year; (3) adjustments for updated EBI estimates for injuries which occurred in prior years; and (4) administrative expenses incurred in operating its self-insurance.

The Commissioner of the Internal Revenue Service (IRS) disallowed these deductions on the grounds that the inclusion of estimates for amounts to be paid in future years did not clearly reflect ESCO's income. The Commissioner also disallowed the deductions on the grounds that ESCO had changed its method of accounting in 1974 without obtaining his approval. After an audit of ESCO's tax returns for 1974 and 1975, the Commissioner required ESCO to deduct its workers' compensation expenses when paid, rather than to accrue the estimated future expenses. ESCO paid the claimed tax deficiency and timely filed for a refund. When its administrative request for a refund was denied, ESCO filed this action.

## II. *Discussion*

This case presents two issues for decision: (1) Whether plaintiff's workers' compensation expenses for the years at issue were determined with reasonable accuracy for tax purposes as required by Treasury Regulation 1.461–1(a)(2) and (2) Whether plaintiff changed its method of accounting for determining its workers' compensation expenses in 1974 within the meaning of 26 U.S.C. § 446(e) and the Treasury Regulations thereunder. For the reasons which follow, I conclude that plaintiff's workers' compensation expenses were not determined with reasonable accuracy. I also conclude that plaintiff changed its method of accounting in 1974.

### A. *Reasonable Accuracy Issue*

The parties dispute the ultimate issue for decision. Plaintiff contends that the ultimate issue is whether ESCO can deduct estimated future workers' compensation expenses in the year of injury or whether it must wait until the year of actual payment. It argues that I must first address the issues of what "reasonable accuracy" means for the purpose of accrual and what degree of accuracy is required. Further, it contends I should decide whether accuracy can be measured in the aggregate or whether ESCO must make accurate forecasts on an individual by individual basis.

The government contends that the only question before me is the narrow question of whether the Commissioner abused his discretion when he disallowed ESCO's deductions as not clearly reflecting income. The government argues that my task is not to determine in my own mind whether ESCO's method of accounting for workers' compensation "clearly reflects income." Rather, it maintains, the task before me is to determine whether there is an adequate basis in law for the Commissioner's conclusion that ESCO's method of accounting did not clearly reflect income.

The government urged this same analysis upon the court in *Kaiser Steel Corp. v. United States*, 82–2 U.S.T.C. ¶ 9635 (N.D. Cal.1982), *aff'd*, 717 F.2d 1304 (9th Cir. 1983). Both the District Court and the Court of Appeals rejected the government's analysis.[2] In *Kaiser Steel,* the Ninth Circuit focused on whether Kaiser could satisfy the "all events" test with regard to its workers' compensation expenses. I am bound by the decision in *Kaiser Steel* and apply it here.

■ Section 446(a) of the Internal Revenue Code (IRC), 26 U.S.C. § 446(a), provides that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 461 of the IRC provides that "[t]he amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." For accrual basis taxpayers, such as ESCO, the regulations set forth what has become known as the "all-events" test.

> Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.... While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy.... Where a deduction is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, if any, between such amounts shall be taken into account for the later taxable year in which such determination is made.

20 C.F.R. § 1.461–1(a)(2) (1983). In order to satisfy the "all-events" test, all of the events that bear on the fact of liability must have occurred in a given year and the

**2.** The following is a summary of the government's analysis. The Commissioner disallowed ESCO's deductions because he determined that the estimates of future expenditures were not sufficiently accurate for tax accounting purposes. Section 446 of the Internal Revenue Code of 1954 provides that taxable income shall be computed under the method of accounting used by the taxpayer in keeping his books unless that method does not clearly reflect income. If the method does not clearly reflect income, the "computation of taxable income shall be made under such method as, in the opinion of the Secretary ... does clearly reflect income." 26 U.S.C. § 446. The Treasury Regulations provide that "no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income." 26 C.F.R. § 1.446–1(a)(2).

Under these provisions, the Commissioner has broad discretion to set aside an accounting method if " 'in [his] opinion,' it does not reflect income clearly." *Thor Power Tool v. Commissioner,* 439 U.S. 522, 540, 99 S.Ct. 773, 785, 58 L.Ed.2d 785 (1979). The Commissioner's exercise of his discretion must be upheld unless it is clearly unlawful or plainly arbitrary. "Since the Commissioner has '[m]uch latitude for discretion,' his interpretation of the statute's clear-reflection standard 'should not be interfered with unless clearly unlawful.' " *Id.* at 532, 99 S.Ct. at 780 (*quoting Lucas v. American Code Co.,* 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 (1930)). ESCO bears a "heavy burden of [proof]" that the Commissioner abused his discretion. *Id.* (*quoting Lucas v. Structural Steel Co.,* 281 U.S. 264, 271, 50 S.Ct. 263, 265, 74 L.Ed. 848 (1930)).

Were it not for the Ninth Circuit's Opinion in *Kaiser Steel,* I would find this analysis persuasive.

amount of liability must be determined with reasonable accuracy.

In *Cresent Wharf & Warehouse Co. v. Commissioner*, 518 F.2d 772 (9th Cir.1975), ·the court held that an injury to an'employee fixes the fact of liability for a self-insured employer. The Ninth Circuit expressly reaffirmed *Cresent Wharf* in *Kaiser Steel, supra*, 717 F.2d at 1308. I conclude that ESCO has met the first prong of the "all-events" test.

I conclude, however, that ESCO does not satisfy the second prong, that the amount be determinable with reasonable accuracy. In . *Kaiser Steel*, the Court phrased the issue as "whether the amount of liability becoming payable in future years could, at the close of the taxable year, be determined with reasonable accuracy through application of Kaiser Steel's medical and accounting practices." *Id.* ESCO's method of accounting for its workers' compensation expenses is detailed in the stipulation of facts. Stipulation of Facts, ¶¶ 22, 26, and 27. The stipulation also details the method by which EBI determines the amount of ESCO's reserves. Stipulation of Facts, ¶¶ 11–17, 20. The accuracy of the reserves is to be determined in the aggregate, rather than on a case-by-case basis. *Kaiser Steel, supra* 717 F.2d at 1310.

In support of its contention that its reserves were accurate, plaintiff presented the testimony of Roy G. Green, Director of Oregon Workers' Compensation Department. In his report, Mr. Green concluded that "the year-end reserves for ESCO incurred losses for the years under discussion are not only accurate estimates of ESCO ultimate liability, but substantially better estimates of workers' compensation liability than one finds in the industry in Oregon." Joint Ex. 22 at 10. Mr. Green conducted various tests of "reasonable accuracy." One of these tests compared paid losses to total incurred losses. Joint Ex. 22 at 6. Using this test, Mr. Green testified that of the total reserve for incurred losses for the 1973 year, 90.9 percent had been paid. For the 1974 and 1975 years, 98 percent and 98.3 percent respectively had

been paid. I do not find this comparison helpful for determining whether ESCO could compute its reserves with reasonable accuracy. As Mr. Green admitted on cross-examination, at some point the incurred losses will equal the amount paid out because the incurred losses account decreases as claims are closed. At some point, his analysis would show 100 percent accuracy, though not the type of accuracy which is relevant to the reasonable accuracy issue.

Mr. Green also compared the estimated liabilities for each year with the actual cash payments from year end to December 31, 1981. This comparison shows that the estimated liability at year end was less than the payments made through December 31, 1981. Mr. Green concludes that ESCO actually under-reserved by 5.1, 9.9, and 18.5 percent for 1973, 1974, and 1975 respectively. The government disputes Mr. Green's methodology. I need not determine whether plaintiff's methodology was correct, for I find that plaintiff's test supports the government's position.

█ In *Kaiser Steel*, the Court found that a seven percent inaccuracy was within the realm of reasonable accuracy. *Kaiser Steel, supra*, 717 F.2d 1309. In this case, the average inaccuracy is 10.17 percent. I find that such discrepancies are not sufficiently accurate for tax accounting purposes. *See Thor Power Tool, supra*, 439 U.S. at 542–43, 99 S.Ct. at 786–87. I also note that, using Mr. Green's figures, ESCO's reserves are increasingly inaccurate as the years pass. I conclude that plaintiff has failed in its burden to prove that its reserves can be determined with reasonable accuracy in the year of injury. *See Wien Consol. Airlines, Inc. v. Commissioner*, 528 F.2d 735, 738 (9th Cir.1976).

B. *Change of Accounting Issue*

The government also contends that in 1974, ESCO changed its method of accounting for workers' compensation expenses without obtaining the Commissioner's approval as required by 26 U.S.C. § 446(e). It is undisputed that ESCO never sought,

nor obtained, the Commissioner's approval to change its accounting method.

The government argues that before 1974, ESCO's deductions for workers' compensation consisted of its actual costs on a yearly basis. In 1974, the government contends, plaintiff increased its deduction to include its reserve for future estimated expenses. This led to a distortion of income, according to the government.

The regulations define "method of accounting" to include "a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan .... A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." 26 C.F.R. § 1.446–1(e)(2)(ii)(a) (1983). The crux of the government's argument is that ESCO changed the timing of its deduction in 1974 when it deducted future expenses.

Plaintiff maintains that it has always deducted future expenses. It contends that it never changed its *method* of accounting for workers' compensation expenses; it merely developed a better formula for computing future expenses. Its method of accounting is set out in Stipulation of Facts, ¶ 26 and Joint Ex. 21. These documents show that plaintiff's accrual formula was composed of three factors: (a) estimated payroll for a month; (b) the Oregon base rate; and (c) an ESCO experience factor. The sum of these monthly entries represented ESCO's annual financial expense and its tax deduction for workers' compensation expenses for 1970 through 1973. The Oregon base rate in ESCO's formula is a percentage of payroll. When multiplied by ESCO's payroll, the product represented the total cost of anticipated workers' compensation expenses. The total cost includes: "(a) the costs of all employee injury claims paid during the year of injury; (b) the estimated future costs of those injuries to be paid in all subsequent years; and (c) the cost of administering those claims from inception of each injury to payout." Affidavit of Roy G. Green (Sept. 23, 1983).

This evidence, however, is contradicted by certain admissions made by plaintiff. In a letter to the IRS, Mr. H.L. Johnson, Assistant Secretary of ESCO states:

> Before its 1974 tax year, we did not have available sufficient information and data upon which we could determine, with reasonable accuracy, our liability for Workman's Compensation awards. Deductions during such years were claimed only for amounts actually paid on account of such awards plus any insurance premiums accrued but unpaid at year end.

Defendant's Ex. 3 at 1 (letter of June 28, 1977). In a later letter, Mr. Johnson writes:

> For its fiscal years 1970 through 1973, ESCO claimed deductions for (1) claim payments made each year to or in respect of its injured workmen and (2) liability incurred during each year to EBI Company for administrative and claims management fees.
>
> For its fiscal years ended December 31, 1974 and December 31, 1975, ESCO claimed deductions of $620,956 and $238,838 respectively for (1) claim payments made during the year to or in respect of its injured workmen (other than those previously accrued), (2) its liability for Oregon State Workmen's Compensation Board awards which were unpaid at year end and not previously accrued, and (3) liability incurred during the year to EBI Company for administrative and claims management fees.

Defendant's Ex. 4 at 2 (letter of Jan. 9, 1978). Later in his January 9, 1978 letter, Mr. Johnson states:

> Beginning with its 1974 fiscal year, ESCO had adequate information from which the *amount* of its liability for Workmen's Compensation claims and Board awards could be determined with reasonable accuracy. It was therefore entitled for the first time to accrue a deduction for these liabilities.

*Id.* at 11.

I conclude that these admissions are the more credible evidence since they were

made closer in time to the events at issue. These admissions show that ESCO did change the timing of its workers' compensation deduction. 1974 was the first year in which ESCO deducted future expenses. Plaintiff's own expert, Mr. Richard Vissie, testified that under these circumstances a change of tax accounting method had occurred. Mr. Vissie also testified that such a change would be a change in timing of a deduction and would distort income. Based on this evidence, I conclude that ESCO did change its method of accounting in 1974 without obtaining the Commissioner's approval.

### III. *Conclusion*

ESCO did not sustain its burden of proving that its reserves for workers' compensation expenses satisfies the second prong of the "all-events" test. The evidence also shows that plaintiff changed its method of accounting in 1974 when it, for the first time, included in its deduction its reserve for estimated future expenses. The government is thus entitled to judgment in this case. Within ten days of the date of this Opinion the parties shall present a form of judgment, the form of which is agreeable to both parties.