**ESCO CORPORATION,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

CA No. 84-3561.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1984.

Decided Jan. 11, 1985.

Clarence H. Greenwood, Richard N. Roskie, Black, Helterline, Beck & Rappleyea, Portland, Or., for plaintiff-appellant.

David English Carmack, William A. Whitledge, Attys., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SKOPIL, FARRIS, and BEEZER, Circuit Judges.

FARRIS, Circuit Judge:

FACTS

ESCO Corporation is subject to the Oregon Workers' Compensation Act, Or.Rev. Stat. §§ 651.001–.990, which requires that employers ensure the payment of workers' compensation claims, either through an independent insurance company or through self-insurance. On July 1, 1970, ESCO began self-insuring its workers' compensation claims for amounts up to $50,000, with excess coverage provided by a commercial insurance company. Among other things, the Act required that ESCO establish and maintain a claims reserve to reflect the estimated future cost of benefits payable to injured employees. ESCO retained Employee Benefits Insurance Company, an independent claims management firm, to maintain this reserve.

When an ESCO employee is injured, a report is forwarded to Employee Benefits. If Employee Benefits does not contest the claim, it establishes a claims reserve account for the estimated liability for medical costs and compensation. These reserves are only on ESCO's books; no funds are actually set aside. The reserve represents the overall cost of all benefits that may be paid to an injured employee and is estimated on the basis of Employee Benefits' own reserving procedures and in compliance with the Oregon Workers' Compensation Department guidelines. It is undisputed that Employee Benefits' estimates of ESCO's workers' compensation liability were more accurate than the industry average in Oregon.

Upon audit of ESCO's 1974 and 1975 tax returns, the Commissioner of Internal Revenue disallowed the amount of workers' compensation expense deductions that represented the estimated cost of future claims expenses. Two reasons were given. First, the amount of future liability for workers' injuries could not be determined with reasonable accuracy and could not, therefore, be deducted until paid. *See* Treas.Reg. § 1.461–1(a)(2) ("all-events" test for deductibility of accrued expenses). Second, ESCO had changed impermissibly its method of accounting for these costs in 1974 from a cash basis to an accrual basis without the Commissioner's permission. *See* I.R.C. § 446(e).

ESCO paid the deficiencies and then sought a refund as well as an additional deduction for the unpaid workers' compensation liability incurred in 1973. When the Commissioner failed to act within the statutorily-prescribed period, ESCO brought suit under I.R.C. §§ 6532(a), 7422(a). ESCO asserted that its deductions for unpaid workers' compensation expenses were determined with reasonable accuracy and thus allowable. It also claimed that it had not changed its method of accounting for this item in 1974, but rather simply employed a more accurate method of determining its accruals. Alternatively, ESCO claimed that it was entitled to a refund on its 1975 taxes for all benefits paid on claims arising in previous years.

In a trial to the court, the district court, 578 F.Supp. 738 (D.Or.1983), found for the government on both issues but granted ESCO's alternative claim for a refund on its 1975 taxes. The court held that the claims estimates were not reasonably accurate because the average inaccuracy for the three years in question was 10.17% and the variance allowed in *Kaiser Steel Corp. v. United States*, 717 F.2d 1304 (9th Cir. 1983), was only seven percent. *Id.* at 1309. The court also found that ESCO had changed its method of accounting for unpaid workers' compensation claims in 1974. The pretrial stipulation and ESCO's books indicated that these items had always been accounted for on an accrual basis. The court relied upon audit letters from ESCO to the IRS, however, to conclude that ESCO admitted that it had, prior to 1974, accounted for such expenses on a cash basis. Accordingly, it held that ESCO had impermissibly changed its method of accounting in 1978. ESCO appeals. We hold that the district court misinterpreted *Kaiser Steel* in concluding that ESCO's estimates were not reasonably accurate. Further, the court's reliance on, and characterization of, ESCO's audit letters was clearly erroneous.

## DISCUSSION

### I. *Reasonable Accuracy Issue*

▇ Under the "all-events" test of Treas.Reg. § 1.461–1(a)(2), an incurred but unpaid expense may be deducted by an accrual basis taxpayer if the liability for the expense is fixed and the amount of the expense can be determined with reasonable accuracy. As the district court correctly noted, *Kaiser Steel* controls the question of how the reasonable accuracy requirement applies to deductions for estimates of future expenses for incurred workers' compensation claims. In *Kaiser Steel,* we held that estimates based upon industry-wide standards that were more accurate than those of the industry as a whole were reasonably accurate. 717 F.2d at 1308–09; *see also* H.R.Rep. No. 432, 98th Cong., 2d Sess. (1984), *reprinted in* U.S.Code Cong. & Ad. News, Legislative History of Deficit Reduction Act of 1984, P.L. 98–369, at 222 (1984), U.S.Code Cong. & Ad.News 1984, p. 3 (discussing *Kaiser* holding).

*Kaiser Steel* established that the pertinent inquiry is whether the estimate of expenses was made with reasonable accuracy on the basis of facts and procedures available to the taxpayer at the end of the tax year in question. 717 F.2d at 1308. This is tested by examining the reasonableness, reliability, and acceptance of the taxpayer's methodology, as well as evaluating the estimates on the basis of actual experience in hindsight. *Id.* at 1308–09. The decision that Kaiser Steel's estimates were reasonably accurate was supported by comparisons of various estimates to actual experience that showed Kaiser Steel had *understated* its workers' compensation liability from 7% to 17%.

*Kaiser Steel* also held that workers' compensation estimates could be tested for accuracy on the basis of aggregate estimates rather than by each individual claim. *Id.* at 1309–10. In support of this, we noted that Kaiser Steel's reserve for liability had proven to be accurate to within 7% of actual payments. Moreover, this percentage represented an *underreserving. Id.*

In the present case, the district court considered the initial reserve-to-actual pay-ments comparison, which yielded a 7% inaccuracy in *Kaiser Steel,* to be dispositive of the reasonable accuracy issue. It noted that under the same test, ESCO's witness found that ESCO had underreserved for its liabilities by 5.1%, 9.9%, and 18.5% for 1973 through 1975, respectively. The district court then averaged these figures together and held that the resulting 10.17% inaccuracy was "not sufficiently accurate for tax accounting purposes." *ESCO Corp. v. United States,* 578 F.Supp. 738, 742 (D.Or. 1983). We find the holding erroneous:

Averaging of results for all three years was inappropriate. Because federal taxation is keyed to a system of annual accounting, questions relating to income and taxation should ordinarily be analyzed on the basis of individual years and not in the aggregate. *See Wilkinson-Beane, Inc. v. Commissioner,* 420 F.2d 352, 356 (1st Cir. 1970) (citations omitted). The 18.5% disparity in 1975 exaggerated the 1973 and 1974 disparities.

The district court also misunderstood our holding in *Kaiser Steel* because of language in that decision. *After* finding that the overall estimate was accurate to within 7% and represented a conservative underestimate, we held that workers' compensation reserves could be tested for accuracy in the aggregate. 717 F.2d at 1309–10. The resolution of this issue, however, came after Kaiser Steel's reserves had been determined to be reasonably accurate. We did not intend to imply that the 7% comparison was the sole indicator of reasonable accuracy.

In *Kaiser Steel,* the commercial and scientific reasonableness, as well as the industry acceptance, of the taxpayer's reserving methodology were important considerations in determining reasonable accuracy. Various hindsight evaluations of the taxpayer's reserves were also relied upon, but they were not dispositive. The limited significance attached to hindsight evaluation is borne out by *Wien Consolidated Airlines, Inc. v. Commissioner,* 528 F.2d 735, 738 (9th Cir.1976). That case involved deductions for estimated workers' compensa-

tion death benefits paid to surviving children and spouses. The taxpayer was required to make surviving spouse payments until the death or remarriage of the spouse. In its estimates of liability, the taxpayer made no provision for the spouses' remarriage and the Commissioner challenged the deduction taken with respect to these amounts. Although it noted that two of the three spouses had remarried, the *Wien* opinion only required the taxpayer to demonstrate that its estimates had included some probability of remarriage. Our refusal to rely on actual experience in *Wien* illustrates that the key consideration is whether the estimates could have been expected to be reasonably accurate when made.

In this case, the uncontroverted testimony of the expert witnesses establishes that ESCO's estimates were based on reasonable, commercially accepted standards and that they were more accurate than the industry norm in Oregon. Moreover, considering all of the hindsight evaluations relied upon in *Kaiser Steel*, the ESCO estimates are at least as accurate as the estimate we allowed there. The year-end loss development factor in *Kaiser Steel* indicated that the taxpayer would eventually pay out 117% of the liability reported on its tax return. The ESCO loss development factors indicate that ESCO will pay out 105%, 108%, and 110% of its reported liability for 1973 through 1975, respectively. Although ESCO's estimate for 1975 was less accurate than the estimate in *Kaiser Steel*, the loss development factor indicates that ESCO's methodology was more accurate.

The government notes that legislation overruling the *Kaiser Steel* accrual allowance of workers' compensation claims has been passed. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 91(a), 98 Stat. 494, 598–99 (1984). However, this change was not motivated, as the government contends, by concerns that estimates of liability are inherently inaccurate. Rather, Congress was concerned that accrued deductions for workers' compensation claims understated the time value of money. *Id.* This consideration argues for acceptance of conservative underestimates of liability such as the ones in this case. *Kaiser Steel* recognized this, *see* 717 F.2d at 1310. It was a proper consideration for the district court in this case.

Although the government disputes the methodology used to assess ESCO's reserving performance, we conclude that the statistical testing was both proper and not significantly different from that employed in *Kaiser Steel*. Further, there is undisputed evidence that ESCO's estimates were reasonable, generally-accepted, and better than the industry norms. We reverse the district court's holding on this issue.

## II. *Change of Accounting Method Issue*

We understand but disagree with the district court's holding that ESCO had changed its method of accounting in 1974 by deducting future workers' compensation expenses for the first time. Under I.R.C. § 446, any change in an overall accounting plan or in the accounting treatment of a material item requires the approval of the Commissioner. The record reflects the absence of the Commissioner's permission.

ESCO contends that Joint Stipulation of Fact No. 26 establishes that its workers' compensation claims expenses were accounted for on an accrual basis. This is not disputed; the district court acknowledged the import of this evidence. *ESCO*, 578 F.Supp. at 743. It found, however, that the stipulation was contradicted by certain admissions ESCO had made in various letters to the IRS. The district court concluded that this evidence was controlling and held that ESCO had changed its method of accounting for workers' compensation claims in 1974.

ESCO makes a preliminary argument that the audit letters relied upon by the district court were not admissible under Fed.R.Evid. 408, because they were written as part of an attempt to negotiate a settlement. The government responds that the audit involved no settlement negotiations, so that Rule 408 is inapplicable. It was not error to admit the letters. ESCO did not object to the admission of its change of accounting method request and objected to

the admission of the audit letters containing similar admissions only on the grounds that the letters were inaccurate and did not fall within the statement against interest exception to the hearsay rule. In so doing, ESCO waived its rights to object to admission of the letters under Rule 408. It failed to make timely and specific objections on that ground. Fed.R.Evid. 103(a)(1).

In spite of this, we agree with ESCO's contention that the letters establish only that, prior to 1974, it was deducting that portion of accrued expenses represented by its actual cash expenditures. ESCO claims to have followed this procedure because the forecasting methodology it employed prior to 1974 was incapable of estimating its accrued claims expenses with the reasonable accuracy required by the regulations. The use of a more sophisticated forecasting methodology in 1974, ESCO further asserts, allowed it to estimate accurately, and therefore deduct, its entire workers' compensation claims expenses. ESCO argues that its actions constitute an acceptable accrual accounting practice sanctioned by the regulations.

Once a liability is fixed, the regulations allow a taxpayer presently to deduct only that portion of its accrued expenses that can be estimated with reasonable accuracy and deduct the rest in later years. Treas. Reg. § 1.461–1(a)(2). The ESCO letters merely indicate that ESCO was deducting its workers' compensation claims expenses in accordance with this procedure.

If ESCO deducted only a portion of its accrued expenses prior to 1974 because of insufficient statistical data and forecasting methodologies, the use of more sophisticated techniques in 1974 cannot be considered a change in accounting method. The new techniques more accurately predicted ESCO's expenses and allowed it to avoid the underaccruals it had been experiencing. The increased deductions in 1974 are the result of "a change in treatment resulting from a change in underlying facts." *Id.* § 1.446–1(e)(2)(ii)(b). It is not a change in accounting method. *Id.*

The letters are unambiguous and application of the regulations to them is, therefore, a question of law subject to *de novo* review. *See United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1108 (9th Cir.1976). Review of the letters indicates that the trial court's conclusion that ESCO employed a cash basis method of accounting prior to 1974 is erroneous.

Reversed and remanded for computation of the refund due to ESCO.